## HOME FOR INCURABLES *v.* NOBLE.

## COLVILLE *v.* AMERICAN SECURITY AND TRUST COMPANY.

APPEALS FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 57, 61.    Argued November 9, 10, 1898. — Decided January 3, 1899.

Mrs. Ruth died on the 16th of June, 1892, having on the first day of the same month and year executed both a will and a codicil. After revoking all previous wills and codicils and directing the payment of debts and funeral expenses, the will bequeathed all the real, personal or mixed property to the American Security and Trust Company for the benefit of a granddaughter, Sophia Yuengling Huston, during her natural life. On the death of the granddaughter the will provided that the trust should end, and that it should be the duty of the trustee to pay over to the Hospital of the University of Pennsylvania the sum of five thousand dollars for purposes stated, and to deliver all the "residue and remainder of the estate of whatever kind" to the Home for Incurables, to which corporation such residue was bestowed for a stated object. The codicil was as follows: I, Mary Eleanor Ruth, being of sound and disposing mind and memory and understanding, do make and publish this codicil to my last will and testament — I hereby revoke and annul the bequest therein made by me to the Home for Incurables at Fordham, New York city, in the State of New York, and I hereby give and bequeath the five thousand dollars (heretofore in my will bequeathed to said Home for Incurables) to my friend Emeline Colville, the widow of Samuel Colville, now living in New York city, said bequest being on account of her kindness to my son and myself during his and my illness and my distress. *Held,* That the effect of the codicil was to revoke the bequest of five thousand dollars, made by the will in favor of the Hospital of the University of Pennsylvania, and to substitute therefor the legatee named in the codicil.

Mary E. Ruth died on the 16th of June, 1892, having on the first day of the same month and year executed both a will

and a codicil.   After revoking all previous wills and codicils and directing the payment of debts and funeral expenses, the will bequeathed all the real, personal or mixed property to the American Security and Trust Company for the benefit of a granddaughter, Sophia Yuengling Huston, during her natural life.   On the death of the granddaughter the will provided that the trust should end, and that it should be the duty of the trustee to pay over to the Hospital of the University of Pennsylvania the sum of five thousand dollars for purposes stated, and to deliver all the " residue and remainder of the estate of whatever kind" to the Home for Incurables, to which corporation such residue was bestowed for a stated object.   The codicil unquestionably gave to Emeline Colville a bequest of five thousand dollars.   The will and codicil are printed in full in the margin.[1]

---

[1] I, Mary Eleanor Ruth, residing in the city of Washington and the District of Columbia, being of sound and disposing mind and memory, do make and publish and declare this to be my last will and testament, hereby revoking and making null and void any and all former wills and codicils by me at any time made.

First. I direct my executor hereinafter named to first pay out of my estate my funeral expenses and all just debts.

Second. I give, devise and bequeath all of my estate, real, personal or mixed, whether in possession, reversion or remainder, now acquired or hereafter to be acquired, and wheresoever situate, to the " American Security and Trust Company" of Washington city, District of Columbia, its successors and assigns, in trust nevertheless for the following uses and purposes only, that is to say —

To invest and to reinvest the proceeds of my said estate in its discretion from time to time in any of the following classes of securities; that is either in United States bonds or in municipal or state bonds or in first mortgage bonds of dividend paying railroads or in loans secured by first trusts upon real estate in the District of Columbia, said loans not to exceed three fourths market value of said real estate; and to pay over so much of the annual income from said investments and reinvestments to the guardian or guardians of my granddaughter Sophia Yuengling Huston, as may be sufficient to provide for her maintenance, education and support until she becomes of the full age of twenty-one years, after which period the entire income so annually received from said investments and reinvestments shall be paid over by said trustee to my said granddaughter for her sole use and benefit for and during the period of her natural life.   Provided, however, that the income thus provided for my said granddaughter for and during

Statement of the Case.

In October, 1895, the American Security and Trust Company, alleging the death of the granddaughter and the termination of the trust, filed a bill to obtain a construction of the will and codicil, to the. end that it might be enabled to distribute the estate, and thus be legally discharged from all

the term of her natural life shall sooner cease and determine at any time when it is ascertained by my said trustee that any part of my said income shall have been given by said granddaughter, or in anywise expended by or through her for the use or benefit of Robert J. Huston, from whom her mother, my daughter, obtained a divorce with custody of said Sophia Yuengling Huston given absolutely to her said mother. In case the income shall so cease and determine before the death of my said granddaughter then said income, and all accumulations thereof and the entire principal of said trust estate shall be disposed of as provided in the next succeeding item of this my last will and testament.

I further authorize my aforesaid trustee to sell any portion of the estate herein conveyed to it in trust as aforesaid and to invest and reinvest the proceeds as hereinbefore provided, giving to purchasers good and sufficient deeds or other evidences of title, without obligation upon the part of said purchasers to see to the application of the purchase money.

Third. In the event of the death of my said granddaughter Sophia Yuengling Huston, or of the occurrence of the prior contingency for the determination of said trust hereinbefore provided in item two, then the trust hereinbefore created and vested in the "American Security and Trust Company" shall cease and be determined, and so much of my said estate shall thereupon be conveyed and delivered over by said American Security and Trust Company to the Hospital of the University of Pennsylvania as amounts to five thousand dollars, said five thousand dollars to be used by said hospital to endow and forever maintain a first-class perpetual bed in said hospital in the city of Philadelphia, said bed to be in the name and memory of my beloved son Malancthon Love Ruth.

All the residue and remainder of my said estate of whatever kind after the payment of said five thousand dollars for the establishment of said perpetual bed in said hospital, I give, devise and bequeath to the "Home for Incurables" at Fordham, New York city, in the State of New York, its successors and assigns, forever to be used by said "Home for Incurables" to endow and forever maintain one or more beds in said home in the name and memory of my beloved son Malancthon Love Ruth.

Fourth. I nominate and appoint Mary Robinson Wright, wife of J. Hood Wright, of New York city, and Mary Robinson Markle, wife of John Markle, of Hazleton, Pennsylvania, and the survivors of them, to be the guardians or guardian of the property and the person of my said granddaughter Sophia Yuengling Huston, they and each of them being my valued friends and having consented to act in that behalf.

Fifth. I hereby nominate and appoint the "American Security and

obligations in the premises. The bill charged that, considering the will and codicil together, there was uncertainty whether the five thousand dollars given by the codicil to Mrs. Colville revoked the bequest in favor of the University of Pennsylvania or substituted Mrs. Colville, in whole or only in part, in the place and stead of the Home for Incurables as to the gift in the will to that institution.

The Hospital of the University of Pennsylvania, the Home for Incurables, Emeline Colville and the heirs at law of the decedent were made parties to the bill. The Hospital of the University of Pennsylvania by its answer denied that there was any ambiguity in the will in regard to the bequest made to it, and averred that such bequest was in nowise impaired by the codicil. The Home for Incurables, although conceding by its answer that there was an ambiguity arising from the will and codicil considered in juxtaposition, yet alleged that the codicil did not in any respect diminish the bequest and devise of the residuum made to it by the will, or, if it did, operated to do so only to the amount of five thousand dollars. Emeline Colville, by her answer, whilst admitting that there was ambiguity in the will and codicil considered together, averred that such ambiguity was patent, and was resolvable by settled rules of construction. She averred that, applying such rules, it was clear that the codicil operated to revoke the bequest and devise of the residuum of the estate made in favor of the Home for Incurables, and

Trust Company" of Washington city, District of Columbia, to be the sole executor of my estate.

I, Mary Eleanor Ruth, being of sound and disposing mind and memory and understanding, do make and publish this codicil to my last will and testament — I hereby revoke and annul the bequest therein made by me to the Home for Incurables at Fordham, New York city, in the State of New York, and I hereby give and bequeath the five thousand dollars (heretofore in my will bequeathed to said Home for Incurables) to my friend Emeline Colville, the widow of Samuel Colville, now living in New York city, said bequest being on account of her kindness to my son and myself during his and my illness and my distress.

In witness whereof I have hereto affixed my name this first day of June, in the year of our Lord eighteen hundred and ninety-two, and I in all other things ratify and affirm my said will.

had substituted Mrs. Colville as the residuary devisee after the payment of the amount of the bequest in favor of the Pennsylvania institution. The heirs at law by their answer, whilst admitting that the codicil gave Emeline Colville five thousand dollars, also asserted that the gift of the residue made by the will, in favor of the Home for Incurables, was revoked by the codicil, and therefore that after payment of the legacy of five thousand dollars given to the Hospital of the University of Pennsylvania, and a like amount due to Mrs. Colville under the codicil, the remainder of the estate passed to them, since as to such remainder the decedent was intestate.

The trial court found that the codicil gave Emeline Colville five thousand dollars, and substituted her to the bequest made in favor of the Hospital of the University of Pennsylvania ; hence, it decreed Mrs. Colville entitled to the five thousand dollars and that the Pennsylvania corporation took nothing. It further decreed that the other provision of the will, that is, the disposition of the residuary estate in favor of the Home for Incurables, was unaffected by the codicil.

The Court of Appeals, to which the controversy was taken, whilst agreeing that the codicil gave Mrs. Colville five thousand dollars, and that she was entitled to this sum, held (the Chief Justice dissenting) that the effect of the codicil was to revoke the bequest and devise of the residuum in favor of the Home for Incurables, and therefore that Mrs. Ruth, as to the entire remainder of her estate, after paying the legacies to the University of Pennsylvania and Mrs. Colville, had died intestate, consequently that the residue of the estate should be distributed among the heirs at law. 10 App. D. C. 56.

*Mr. George H. Yeaman* and *Mr. J. S. Flannery* for the Home for Incurables. *Mr. George C. Kobbe* was on their brief.

*Mr. Henry P. Blair* for the Hospital of the University of Pennsylvania.

*Mr. Henry Thompson* for Mrs. Colville. *Mr. Edwin Sutherland* filed a brief for same.

*Mr. Henry Randall Webb* and *Mr. John Sidney Webb* for Mrs. Noble and others.

*Mr. William A. McKenney* submitted on behalf of the American Security and Trust Company.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

It will subserve clearness of understanding to accurately define at the outset the real contentions which underlie the issues presented.

It is not gainsaid by either of the beneficiaries under the will that the plain intention of the testatrix expressed in the codicil was to give Mrs. Colville the sum of five thousand dollars. Indeed, assertion that there was doubt on this subject could not reasonably be made in view of the explicit terms of the codicil. The uncertainty which it is alleged exists in the codicil is solely as to which one of the beneficiaries, named in the will is to be affected by the payment of the sum given by the codicil. Each of those benefited by the will in substance asserts that the codicil is certain in so far as it manifests the intention of the testatrix to give, and that it is equally certain as to the fund from which the payment is to be made, provided such fund is found to be the provision made by the will in favor of the other. The arguments hence at once resolve themselves into the single assertion that, although the gift made by the codicil is certain, its enforcement may or may not be possible, depending on the particular fountain from which it may be concluded the testatrix intended the stream of her benefaction should flow. And although differing in form of statement, the contentions upon which the legal heirs and Mrs. Colville base their claim of right to the residuary estate substantially conduce to a like, although more aggravated, result. The first (the legal heirs) concede the certainty of the intention of the testatrix as expressed in the codicil to give a specific sum to Mrs. Colville, but claim that in the execution of this defined purpose the testatrix

brought about uncertainty as to the entire residuum of her estate, since intestacy, it is claimed, was created in that regard. The second (Mrs. Colville), whilst equally granting the clear purpose of the testatrix, by the codicil, to give her only the sum of five thousand dollars, yet argues that this purpose has been so expressed as not only to give the sum intended but the entire remainder of the estate besides.

Before approaching the text of the will and codicil we will notice an erroneous statement of the rule of law by which it is claimed the assertion that the codicil is uncertain is to be tested, and will also state the general scope of the power which courts of equity will exert to correct mistakes in wills and the cardinal rule of construction which they adopt in so doing.

It is strenuously argued that unless it be found that the codicil takes away from one of the beneficiaries named in the will the whole or a portion of what the will gives, by language as clear and as free from ambiguity as that contained in the will, the codicil is void for uncertainty, and the provisions of the will remain unaffected. This broad proposition is unsound, and the authority by which it is apparently supported has been explained or qualified. Thus in *Randfield* v. *Randfield*, 8 H. L. 225, Lord Campbell (p. 234) stated the rule as follows:

" The *ratio decidendi*, upon which it is said that the Vice Chancellor held that no operation is to be given to the limitation over on the death of the son without issue, ' If you have a clear gift it shall not be cut down by anything subsequent, unless it is equally clear,' appears to me to be insufficient. If there be a clear gift, it is not to be cut down by anything subsequent which does not with reasonable certainty indicate the intention of the testator to cut it down, but the maxim cannot mean that you are to institute a comparison between the two clauses as to lucidity."

And in the same case, Lord Wensleydale, at p. 237, said :

" The gift being in terms absolute cannot be cut down, unless there is a sufficiently clear indication of an interest [intent ?] to defeat it by the subsequent clause. I quite agree with the Lord Chancellor in the construction of those words

to which he referred, that you need not have a clause equally clear, but it must be reasonably clear, and the clause to which that effect is attributed by the respondents is capable of a construction confining its effect to the real estates only."

And this rule of reasonableness is applicable, with peculiar potency, to a case like the one now before us, where the effect of defeating the codicil for uncertainty will confessedly frustrate the clear intention of the testatrix. In this connection the language of Lord Brougham, concurred in by the House of Lords in *Winter* v. *Perratt*, 6 Mann. & Gr. 314, 359, is pertinent:

"We ought not, without absolute necessity, to let ourselves embrace the alternative of holding a devise void for uncertainty. Where it is possible to give a meaning, we should give it, that the will of the testator may be operative; and where two or more meanings are presented for consideration, we must be well assured that there is no sort of argument in favor of one view rather than another, before we reject the whole. It is true the heir at law shall only be disinherited by clear intention; but if there be ever so little reason in favor of one construction of a devise rather than any other, we are, at least, sure that this is nearer the intention of the testator, than that the whole should be void and the heir let in.

"The cases where courts have refused to give a devise any effect, on the ground of uncertainty, are those where it was quite impossible to say *what* was intended, or where no intention at all had been expressed, rather than cases where several meanings were suggested, and seemed equally entitled to the preference. . . . On this head, it may further be observed, that the difficulty of arriving at a conclusion, even the grave doubt which may hang around it, certainly the diversity and the conflict of opinions respecting it, and the circumstances of different persons having attached different meanings to the same words, form no ground whatever of holding a devise void for uncertainty. The difficulty must be so great that it amounts to an impossibility; the doubt so great that there is not even an inclination of the scales one way, before we are entitled to adopt the conclusion. Nor have we any right to

regard the discrepancy of opinions as any evidence of the uncertainty, while there remains any reasonable ground of preferring one solution to all the rest. The books are full of cases, where every shift, if I may so speak, has been resorted to, rather than hold the gift void for uncertainty."

No less clearly marked out is the conceded authority of a court of equity to correct mistakes in wills and to enforce the real intention of the testator by giving that construction which accomplishes such purpose. Story, 1 Eq. Jur. 12th ed. p. 174, says:

"Sec. 179. In regard to mistakes in wills, there is no doubt that courts of equity have jurisdiction to correct them, when they are apparent upon the face of the will, or may be made out by a due construction of its terms; for in cases of wills the intention will prevail over the words. But, then, the mistake must be apparent on the face of the will, otherwise there can be no relief; for, at least since the Statute of Frauds, which requires wills to be in writing, (whatever may have been the case before the statute,) parol evidence, or evidence *dehors* the will, is not admissible to vary or control the terms of the will, although it is admissible to remove a latent ambiguity.

"Sec. 180. But the mistake, in order to lead to relief, must be a clear mistake, or a clear omission, demonstrable from the structure and scope of the will. Thus, if in a will there is a mistake in the computation of a legacy, it will be rectified in equity. So, if there is a mistake in a name, or description, or number of the legatees, intended to take, or in the property intended to be bequeathed, equity will correct it."

In *Hardenbergh* v. *Ray*, 151 U. S. 112, at p. 126, the court, through Mr. Justice Jackson, thus stated the doctrine:

"The cardinal rule for the construction of wills, to which all other rules must bend, as stated by Chief Justice Marshall in *Smith* v. *Bell*, 6 Pet. 68, 75, is, that 'the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the *will* of the person who makes it, and is

defined to be "the legal declaration of a man's intentions, which he wills to be performed after his death." These intentions are to be collected from his words, and ought to be carried into effect if they be consistent with law.'" See also *Colton* v. *Colton*, 127 U. S. 300.

We come then to the text of the will and codicil in order to consider, first, whether the bequest and devise of the remainder, which the will makes, is in whole or in part affected by the codicil; and, second, if not, whether the codicil substitutes Mrs. Colville to the bequest in favor of the Hospital of the University of Pennsylvania, thereby revoking the gift of five thousand dollars made to the said hospital and conferring that sum upon Mrs. Colville.

The language of that portion of the will with which we are now concerned is as follows:

"Third. In the event of the death of my said granddaughter Sophia Yuengling Huston or of the occurrence of the prior contingency for the determination of said trust hereinbefore provided in item two, then the trust hereinbefore created and vested in the 'American Security and Trust Company' shall cease and be determined, and so much of my said estate shall thereupon be conveyed and delivered over by said American Security and Trust Company to the Hospital of the University of Pennsylvania as amounts to five thousand dollars, said five thousand dollars to be used by said hospital to endow and forever maintain a first-class perpetual bed in said hospital in the city of Philadelphia, said bed to be in the name and memory of my beloved son Malancthon Love Ruth.

"All the residue and remainder of my said estate of whatever kind after the payment of said five thousand dollars for the establishment of said perpetual bed in said hospital, I give, devise and bequeath to the 'Home for Incurables' at Fordham, New York city, in the State of New York, its successors and assigns forever, to be used by said 'Home for Incurables,' to endow and forever maintain one or more beds in said home in the name and memory of my beloved son Malancthon Love Ruth."

The codicil says:

" I, Mary Eleanor Ruth, being of sound and disposing mind and memory and understanding, do make and publish this codicil to my last will and testament — I hereby revoke and annul the bequest therein made by me to the Home for Incurables at Fordham, New York city, in the State of New York, and I hereby give and bequeath the five thousand dollars (heretofore in my will bequeathed to said Home for Incurables) to my friend Emeline Colville, the widow of Samuel Colville, now living in New York city, said bequest being on account of her kindness to my son and myself during his and my illness and my distress.

" In witness whereof I have hereto affixed my name this first day of June, in the year of our Lord eighteen hundred and ninety-two, and I in all other things ratify and affirm my said will."

It is apparent that the portions of the will which are in question contain but two provisions, first, a bequest of five thousand dollars to the Hospital of the University of Pennsylvania, and, second, a bequest and devise of the entire remainder of the estate to the Home for Incurables. This is so self-evident as to require nothing but statement. The codicil, it is obvious, makes one bequest only, that is, five thousand dollars to Mrs. Colville. It points out the source whence this sum is to be taken, by designating the particular fund created by the will from which the same is to be obtained. This designation is made in a twofold way : First, by naming the person in whose favor the will gives a right, thereby pointing out that it is the fund given to such person which is to be drawn on in order to execute the gift in favor of Mrs. Colville. Second, it also designates the source whence the five thousand dollars is to be taken, by describing the character of the bequest in the will which is to be used to pay the legacy created by the codicil. As a result the codicil revokes the bequest in the will upon which it operates and substitutes the beneficiary named in the codicil for the beneficiary under the will. The controversy arises from the fact that there is conflict between the two designations made by the codicil, the name on the one hand and the character of the thing given on the other.

This conflict plainly appears from a consideration of the text of the codicil: "I hereby revoke and annul the bequest therein" (that is, in the will) "made by me to the Home for Incurables at Fordham, New York city, in the State of New York, and I hereby give and bequeath the five thousand dollars (heretofore in my will bequeathed to said Home for Incurables) to my friend Emeline Colville." That these words show a change of purpose as to a gift of five thousand dollars found in the will and a substitution of the new beneficiary for the one mentioned in the will, is beyond reasonable doubt demonstrated by the text. The revocation made by the codicil is but consequent on the gift to the new legatee of "the" sum "heretofore in my will bequeathed," and thus makes it patent that the revocation and the gift are truly one and the same act of volition, and that they arise from and depend one on the other. Which then of the two designations in the codicil contained is the controlling one, or, otherwise stated, which was mistakenly used by the testatrix?

The language revoking and annulling in the codicil is "the bequest therein (that is in the will) made by me." The gift by the codicil is a bequest of "the five thousand dollars heretofore in my will bequeathed." Now the only clause in the will to which this description can possibly apply is the single and only specific bequest found in the will, that is, the five thousand dollars given by the will to the Hospital of the University of Pennsylvania. It follows that the only possible subject to which the codicil can apply is the only one found in the will to which the description can possibly relate, and which it defines with certainty and clearness. To adopt the designation which the codicil gives when it states the name of the beneficiary of the provision in the will would absolutely destroy the description of the character of the thing stated in the codicil, since there is nothing given by the will to the Home for Incurables which comes under or can possibly be embraced within the specific description contained in the codicil of the object of gift to be affected. Now, as it is manifest from the codicil that the purpose of the testatrix was but, in making the codicil, to change the benefit by her

conferred under the will only to the extent of the bequest found in the will of five thousand dollars, and that her sole intent was to confer this gift on a new person, it would follow if the mention by the codicil of the name of the supposed recipient of the gift were allowed to control, that the thing revoked would be dominated by the mere name, the representative would be greater than the thing it stood for, and the plain intent and purpose of the testatrix, apparent on the face of the codicil, would be frustrated. Moreover, a yet more serious departure from the words and intention of the testatrix would result. It is plain from the will that the fixed design of the testatrix was to provide for the disposition of her entire estate; that is, that she assiduously sought to avoid intestacy as to any portion thereof. But if the name mentioned in the codicil be allowed to destroy the accurate description of the nature of the thing upon which the codicil operates, intestacy as to the remainder of the estate would arise, since such result must flow from the assumption that the revocation made by the codicil relates to the devise of the remainder of the estate made by the will. To hold that the name in the codicil controlled the description would be tantamount to saying that although the testatrix intended, and had stated such intention in clear language, to dispose of all her estate, yet by writing the codicil she had become intestate to the full limit of all the remainder. Besides, to thus construe the will would be to declare that the greater portion of the codicil was wholly unnecessary and meaningless; for, if the intention had been that the sum given should be paid by diminishing the remainder, then all reference to the particular gift which was to be operated upon was superfluous.

The intention of the testatrix as shown by the entire codicil is greatly fortified by considering that the context of the will and codicil establish, beyond cavil, that they were written by one familiar with the technical legal terms, and hence that the provisions found in both instruments were carefully made to conform to legal phraseology. Now, the thing revoked is called in the codicil "the bequest" made in the will, which contradistinguishes it from the bequest and devise of "all

the residue and remainder" of the estate of the testatrix "of whatever kind," which the will contains.

The reasoning by which it is contended that the designation by name found in the codicil must be held as dominant and must be construed as obliterating the clear and legally precise indication of the thing intended to be revoked, which the codicil itself affords, does not commend itself to our approval. That reasoning thus proceeds: The codicil contains a revocation and a gift. The two are wholly distinct, the one from the other. As therefore the revocation refers by name to the bequest made to the Home for Incurables, and revokes it, therefore the provision made by the will for testacy as to the entire remainder is destroyed, even although the gift made by the codicil is only of five thousand dollars, and despite the fact that it plainly, by its terms, refers solely to a bequest of that amount made in the will. But to adopt this view compels a distortion of the language of the codicil, a mutilation of its context, and a division of its provisions into two distinct and substantive matters, when in fact on the face of the codicil it contains but one provision, a revocation and a gift, the one dependent upon the other, the one caused by the other; that is to say, a revocation made in order to give and a gift made solely of the thing revoked. Indeed, to support the view that because the name of the Home for Incurables is stated in the codicil, that instrument had reference to the bequest and devise of the remainder of the estate made by the will, requires not only the arbitrary division of a single sentence in the codicil into two parts, although they are indissolubly connected, but also necessitates a misconstruction of another portion of the will. This follows from the fact that even although the revoking part of the sentence be alone taken into view, dissevered from that with which it is connected in the codicil by a union of thoughts and of words which cannot be disassociated, the codicil cannot be said to apply to the gift of the remainder without destroying the signification of its language. The thing annulled and revoked by the codicil is not the bequest and devise of the remainder, but *the bequest* by the will made. The language of the codicil

is : " I hereby revoke and annul the bequest therein made by me." But only one " bequest," that is, the one for five thousand dollars, existed in the will. To cause the word " bequest" to refer to the remainder is to enlarge its scope and significance beyond its legal import. True, to justify the construction that the word " bequest" is synonymous with a bequest and devise of the remainder, it is said that the testatrix by her will " directed" the trustee to sell the real property and to convert all the estate into personal property, and therefore that it might well have been contemplated by her that when the time arrived for a distribution of the estate that the remainder would consist solely of personal property, and therefore, in mental contemplation, the testatrix may naturally have assumed that the transmission of the remainder would be but a bequest exclusively of personal property. This overlooks the fact that the will and codicil were written on the same day ; that the period when the life estate was to cease and the gifts made by the will were to become operative was necessarily wholly uncertain, and that the terms of the will and codicil evidently relate to the condition of the estate at the time that they were made and not to that which might exist at a subsequent and uncertain period. The reasoning moreover must rest on a self-evident disregard of the terms of the will, which does not, as is expressly asserted to be the case, " *direct*" the trustee to convert the real estate into personal property, but simply " *authorized*" it to so do.

And this analysis which demonstrates that the terms of the codicil do not apply to the bequest and devise of the remainder so as to bring about intestacy, also with equal conclusiveness shows that the codicil cannot be construed as reducing the bequest and devise of the remainder to the extent of the five thousand dollars which the codicil gives. To so construe it would be to obliterate the words " the five thousand dollars heretofore in my will bequeathed." It would be to assume that a revocation of a gift in the will had been made by the codicil when there was no necessity for so doing, for if the testatrix had intended simply to give five thousand dollars out of the residue, the mere expression of an intention to give

five thousand dollars would have been entirely sufficient in law to effect such purpose without the slightest necessity of any revocatory clause whatever. This is but to state in another form the abounding reason we have already mentioned, that the express result of the words of the codicil was not alone to revoke a provision of the will, but to do so solely to the extent and for the purpose of executing the new intention conceived by the testatrix by dedicating a particular and named bequest made by the will to the new purpose, and, hence, that the thing selected for revocation and substitution was accurately described in the codicil, omitting the name of the beneficiary thereof, as "*the* bequest" . . . "of five thousand dollars heretofore in my will bequeathed." Considered in its ultimate aspect, the proposition that the codicil gave five thousand dollars to the legatee named therein out of the remainder necessarily affirms that the codicil relates to the remainder, and therefore asserts that the testatrix intended not simply to revoke in order to substitute the new beneficiary to the specific sum revoked, but to create an independent provision wholly disconnected from the bequest made by the will. But this cannot be maintained without striking out the major part of the codicil, and thus frustrating the plain intention of the testatrix unambiguously expressed in the letter and obviously within the spirit of the instrument.

As, then, the codicil does not, in whole or in part, refer to the bequest and devise of all the residue and remainder made by the will in favor of the Home for Incurables, it remains only to consider whether it operates upon the bequest of five thousand dollars made by the will in favor of the Hospital of the University of Pennsylvania. If it does, it substituted the legatee named in the codicil for the institution in question. If it does not, the codicil is void for uncertainty, since there is no other source from which the sum to execute the gift which it makes can be taken. Conversely it results that all the reasoning by which it has become manifest that the codicil did not either apply to the gift of the remainder, establishes that it does so apply to the gift made by the will in favor of the Hospital of the University of Pennsylvania. In

the first place the gift to that corporation is the only specific bequest found in the will, and in the second place it is of the same amount as that named in the codicil. It is therefore embraced within the strictest letter of the description given by that instrument, " the bequest therein (in the will) made by me," and " the five thousand dollars heretofore in my will bequeathed." And a consideration of the whole scope of the will strengthens the force of the language of the codicil. The bequest of five thousand dollars given by the will to the Hospital of the University of Pennsylvania was to be used by it " to endow and forever maintain a first-class perpetual bed in said hospital in the city of Philadelphia, said bed to be in the name and memory of my beloved son Malancthon Love Ruth." The bequest and devise of " all the residue and remainder of my said estate of whatever kind " in favor of the Home for Incurables was " to endow and forever maintain one or more beds in said home in the name and memory of my beloved son Malancthon Love Ruth." The purpose then of both gifts was the same. Now, the declared motive generating the making of the codicil in favor of Mrs. Colville was " on account of her kindness to my son and myself during his and my illness and my distress." The natural interpretation of the intention upon which the three provisions rests is reasonably as follows : Having provided for the perpetuation of the memory of the son by the execution of works of charity of substantially the same nature by two different institutions, the one by the use of five thousand dollars to support one bed, and the other and more important by the application of all the residue and remainder of the estate to support one or more beds, when the mind of the testatrix came to the conclusion that her tenderness to the memory of her son should be manifested by a gift to one who had befriended him, the means of executing this thought which she selected was this, not the revocation or impairment of the greater provision made by the will for honoring the memory of the son, but the transfer of the previous and lesser provision of five thousand dollars to the new legatee. By this means the general plan expressed by the will was unaltered,

despite the execution of the conception which the codicil embodied. It may, in consonance with reason, be considered that the testatrix, whose mind, as the codicil shows, was charged with the recollection of the purposes expressed in her will, should have inadvertently used a wrong name, especially as each of the beneficiaries under the will were to apply the thing given to a like good work. It cannot, however, without denying the reason of things, be successfully asserted that although the testatrix specifically pointed out the clause in her will which she revoked, nevertheless by the mere mistaken use of the name of the person she destroyed or intended to destroy the plain and specific description which she vividly embodied in the very sentence where the name was inadvertently stated.

From the foregoing, it results that the use of the name Home for Incurables, in the codicil, was but a mere mistaken designation, dominated and controlled by the description of the character of thing to be affected by the codicil stated therein. Guided by the principles enunciated in the authorities to which reference at the outset was made, such mere mistake may be corrected, in construing the will, by disregarding the error and following the full and accurate description which will then be contained in the instrument; and hence that the effect of the codicil was to revoke the bequest of five thousand dollars, made by the will in favor of the Hospital of the University of Pennsylvania, and to substitute therefor the legatee named in the codicil.

*The decree of the Court of Appeals of the District of Columbia must be reversed, and the cause remanded to that court with directions to affirm the decree of the Supreme Court of the District, the costs of all parties to be paid out of the estate, and it is so ordered.*

MR. JUSTICE GRAY, not having heard the argument, took no part in the decision of this case.