JACOB FRY, ET AL., Contestants, Appellants, v. AGNES FRY, ET AL., Appellees.

**Wills:** REVOCATION BY SUBSEQUENT WILL: CONSTRUCTION. Whether a
1    former will has been revoked in whole or in part by the execution of a subsequent writing, depends upon the intent of the testator as gathered from the instrument of revocation itself; and where the latter instrument deals only with a portion of the property and there is an express provision of revocation so far only as the two instruments are inconsistent, they will be construed together and effect given to each so far as possible.

**Revocation:** SUBSEQUENT BIRTH OF CHILD. Under section 3276, as
2    enacted in the Code of 1897, the birth of a legitimate child subsequent to the execution of a will and prior to the death of the testator, operates to revoke the will, irrespective of whether provision was made for the child therein, and the right to take advantage of the revocation is not confined to such subsequently born child.

*Appeal from Johnson District Court.*— HON. O. A. BYINGTON, Judge.

THURSDAY, OCTOBER 27, 1904.

THIS is a contest over some papers purporting to be the last wills and testaments of John Fry, deceased. The first will bears date August 10, 1882. To this is a codicil under date of May 20, 1888. The so-called last will and testament bears date December 26, 1898. It is claimed that this last will revoked all former ones, and that each and every one of these instruments was revoked by the birth of children to the testator after the execution of each paper. The trial court held the wills all valid, and admitted them to probate. Plaintiffs, who are the children and grandchildren of the deceased by his first marriage, and contestants of the wills, appeal.— *Reversed.*

*M. J. Wade, S. H. Fairall,* and *J. W. Smith,* for appellants.

*A. E. Maine,* for appellees.

DEEMER, C. J.— The first will undertook to dispose of testator's entire estate, some of it by specific bequests, and other parts by general legacies and devises. The codicil re-

1. WILLS: revo- voked certain specific devises, and proceeded as cation by sub- sequent will; follows: " I devise and bequeath to the construction. children born to me by my second marriage, all the property of which I may die seized, the same to be equally distributed among them, share and share alike, subject, however, to the use and benefit of my wife as above provided." This also had the effect of revoking the bequest of testator's personal property to his wife, Agnes.

The last testament devised to certain grandchildren, heirs of Laura J. Boone, a deceased daughter —

All the right title and interest which I may own at my death in and to the N. W. quarter of the N. W. quarter of

Section 15 in Township 78, North, Range 8 West, of the 5th P. M. being an undivided one third interest thereon, devised by a deed to me from W. A. Boone, subject to the following exceptions, restrictions and limitations, towit: —

 1st.   That none of said devisees shall be entitled to said property, until the youngest of said children, Lala, shall arrive at the age of eighteen years, unless she sooner dies.

2nd.   That the respective devisees shall have no right to or in said property as long as there is any debts against the one entitled to the benefits of· above devise, and if there be such debts, then the share of the one so indebted shall go to the others not indebted.

Item II.  ·I appoint William Fry and Bruce Patterson to hold said property, until the parties above named are entitled thereto under the above provisions and they or their successors may sell said property, and convey the same without any order of court, and reinvest proceeds as they see best.

Item III.   In case of death of said trustees the District Court of Johnson County, Iowa, may appoint their successor or successors, them to have all the power of first named trustee.

·Item IV.   I revoke any provisions of former will inconsistent with this.

Item V.   I appoint Bruce Patterson and William Fry, executors of this will.

Signed Dec. 26th, 1898.

Testator was twice married.   He was wedded to his second wife and present widow in the year 1878, and by her had eight children, each and all of whom survived him.   Of these children, Frank was born after the first will was executed, and before the making of the codicil.   Four (Earl, Leo, George, and Gerald) were born after the making of the codicil, and before the execution of the last will, and one (Clifford) was born after the execution of the last will, but before testator's death.   The contentions made on this appeal are, first, that the last will revoked the former will and codicil, and second, that the birth of children revoked each and all of them.

Section 3276 of the Code, before its recent amendment,

which was after this case was determined, and after the death of the testator, read as follows: " Wills can only be revoked in whole or in part * * * by being canceled or destroyed, by the act or direction of the testator, with the intention of so revoking them, or by the execution of subsequent wills. When done by cancellation the revocation must be witnessed in the same manner as the making of a new will; but the subsequent birth of a legitimate child to the testator, before his death, will operate as a revocation." It will be noticed that the last will expressly provides that testator revokes " any provision of former wills inconsistent with this." But counsel contend that, under the statute quoted, the execution of the last will *ipso facto* revoked and canceled the first, with its codicil. Turning again to the statute, it will be observed that wills may be revoked, either in whole or in part, in the manner provided. Whether revoked in whole or in part must depend upon the testator's act and intent as gathered from the instrument of revocation itself. That the testator did not intend to revoke all the provisions of his former will is manifest from the face of the instrument itself. True, he states in this last paper that he makes, publishes, and declares it to be his " last will and testament " but this is not controlling, and should not be held to revoke his former will, if it is manifest that he did not so intend it. *Gordon v. Whitlock,* 92 Va. 723 (24 S. E. Rep. 342). If this last instrument had been denominated a codicil, as it in effect was, there would be no difficulty with this aspect of the case. But it is the right as well as the duty of the court to arrive at the testator's intent in this regard, and if the two wills, taken together, will prevent partial intestacy, they will be construed as one, in so far as this may reasonably be done. *Austin v. Oakes,* 117 N. Y. 577 (23 N. E. Rep. 193) ; *Price v. Maxwell,* 28 Pa. 23. Moreover, where, as here, there is an express disclaimer of a purpose to entirely revoke the former will, courts almost universally construe the two wills together, and give effect to each, in so far as it may be done.

*Succession of Shaffer,* 50 La. Ann. 601 (23 South. Rep.
739). While some effect should no doubt be given the ex-
pression that it was his last will and testament, rather than
a codicil, yet as this last paper, if held his only will, would
result in partial intestacy, courts are not inclined to regard
the language used as controlling. *In re Fisher,* 4 Wis. 254
(65 Am. Dec. 309). That there may be a partial revocation
only, by a subsequent will, is not only apparent from the
statute quoted, but from the decisions of courts of recognized
authority as well. *Home for Incurables v. Noble,* 172 U. S.
383 (19 Sup. Ct. Rep. 226, 43 L. Ed. 486); *Johns Hopkins
University v. Pinckney,* 55 Md. 365; *Nelson's Estate,* 147
Pa. 160 (23 Atl. Rep. 373). We reach the satisfactory con-
clusion that all these instruments should be construed togeth-
er and treated as one.

II. The second point made by appellants is not so
easy of solution. The statute expressly provides that the
subsequent birth of a legitimate child to the testator before
his death will operate as a revocation of his
will. To this there are no exceptions or quali-
fications stated. This law was passed by the
Legislature which adopted the Code of 1897. Before that
there was no statute on the subject, but we had held that the
subsequent birth of a child for which no provision had been
made operated as an implied revocation of a will. The diffi-
culties presented by this new statute are pointed out in *Rowe
v. Rowe,* 120 Iowa, 17. The codicil to the first will recog-
nizes and makes provision for children born to the testator
by his second marriage. As we understand it, it gave them
the remainder in fee of all testator's real estate, after carv-
ing out a life estate for his second wife, which was modified
to a certain extent by the so-called last will; and, although
there may be some doubt about this, it also gave them his
entire personal property not needed for the payment of
debts. By the terms of the first will the personal property
not needed for the payment of debts was given his wife

*2. REVOCATION:
subsequent
birth of child.*

absolutely; but this bequest was, as we understand it, changed by the codicil. Here, then, was a substantial provision for these children, if there be any estate at all — anything to have a controversy over. Indeed, they were given more than they would have been entitled to under the law. In view of this, appellees contend that we should read into the statute the words, " for whom no substantial provision has been made," or their equivalent, after the word " death." The authority for so doing is said to be found in the former holdings of this court with reference to the effect, in the absence of statute, of the subsequent birth of a child to the testator, and a statement of the Code commissioners, who recommended the insertion of the latter clause of the statute, to the effect that " this clause states a rule which had been announced by the decisions of the Supreme Court." It is true that it does state a rule announced by this court, but for some reason it did not state any exceptions to or qualifications of that rule. We may, for the purposes of the case, assume that the Code commissioners did not intend to nullify these exceptions or qualifications, although this is by no means free from doubt; but we have no means of knowing what the Legislature intended, except from the language used, and that contains no modifications or exceptions, nor does it by any sort of inference suggest any. If this statute were presented to us for construction, without reference to the decisions of this or other courts adopting the civil-law rule, there would be no difficulty in its application to the facts disclosed by this record. It is clear, certain, and unambiguous. By its terms it unequivocally provides that the subsequent birth of a legitimate child shall revoke a testator's will. Under such a statute, would we be justified in saying that the subsequent birth of an illegitimate child would revoke a will? Manifestly not. And yet we had held, before the adoption of this act, that such an event, if the illegitimate was subsequently recognized by the father and testator, did revoke it. Again, suppose the

testator adopted a child after the making of his will; would this revoke it under the statute? No, unless by a wide stretch of judicial construction; and yet under previous decisions, following the civil law, which we adopted for this State with reference to such matters, subsequent adoption did defeat a will. We shall not set out the cases bearing upon these propositions, as they are familiar to the profession, or may be easily found. When a statute is clear, plain, and unambiguous, there is no room for construction. *Shonkwiler v. Stewart,* 104 Iowa, 67; *In re King's Estate,* 105 Iowa, 325; *McIver v. Ragan,* 2 Wheat. (U. S.) 25 (4 L. Ed. 175).; Endlich on Interpretation of Statutes, section 17, and cases cited. We are constrained to hold that, under the statute quoted, each and all of these wills and codicils were revoked by the subsequent birth of legitimate children to the testator after the making of each of them, and before the testator's death.

It may be well to observe that the law now under consideration was amended by the last Legislature, and that no such difficulties as we have here are likely to arise again. See Acts Thirtieth General Assembly, page 115, chapter 120.

Appellees' contention that no one but these subsequently born children may take advantage of the revocation is fully met and decided adversely to them in *Alden v. Johnson,* 63 Iowa, 124.

For the reason pointed out, the judgment must be reversed, and the cause remanded for such orders as may be necessary to meet the views expressed in this opinion.— *Reversed.*