[No. 5511.]
[No. 3181 C. A.]

*In the Matter of the Probate of the Will of James W. Westlake, Deceased.*

WHITNEY ET AL. v. HANINGTON ET AL.

1.  **Wills—Probate—Nonresident Heirs—Affidavit for Publication.**
    Section 25 of the Wills Act of 1903 provides that if, on an application for probate, it shall appear that any heir at law of the testator resides or hath gone out of this state, or upon diligent inquiry cannot be found, then the judge of the county court shall cause to be published in some newspaper a notice addressed to such nonresident, setting forth the presentation of such will for probate, and requiring such heirs at law to attend. Held, that an

affidavit for such publication, alleging that certain heirs of the deceased could not, after due diligence and inquiry, be found in this state, is sufficient; and the further allegation contained therein, made upon information and belief, that they resided in the state of California, is unnecessary to give the court jurisdiction to issue the order of publication, and, therefore, it does not make the affidavit defective.—P. 413.

**2.   Same—Citation—Publication—Previous Issuance and Return.**

Section 24 of the Wills Act of 1903 provides that, on the production of any last will for probate, the court shall ascertain the names and places of residence of the heirs at law, and, thereupon, a citation shall issue to such persons, requiring them and each of them to attend the probate of such will; and section 25 provides that, in case any heir resides or hath gone out of the state, or, upon diligent inquiry, cannot be found, publication may be made. Held, that the order for publication is in no way dependent upon the previous issuance and return of the citation.—P. 413.

**3.   Same—Probate—Policy of the Courts.**

While it is not the policy of the courts to strain to admit wills to probate, neither is it the policy of the courts to strain in order to refuse the probate of a will. If the testator has testamentary capacity, and the mind is free from improper influences, and the will is intelligible, it should be admitted to probate. Every effort is to be made to execute the intention of the testator, and captious or specious reasoning should not be indulged in for the purpose of creating a doubt where none exists, or rendering that unintelligible which is intelligible. Otherwise the Statute of Wills becomes a mockery, and the learning expended upon it becomes as salt which has lost its savor, fit only for the rubbish heap.—P. 415.

**4.   Same—Two Instruments.**

Two instruments, each purporting to be the last will of the decedent, may be admitted to probate as forming together one last will and testament, unless the circumstances under which the last will was made prohibit such a condition, or the conditions of the two wills are so repugnant and inconsistent that they may not stand together.—P. 416.

**5.   Same—Testator's Intention—Parol Evidence.**

In determining whether the intention of the testator, by making a subsequent will, was to revoke a former one, parol evidence concerning a conversation that took place at the time the second will was executed with reference to the first will was admissible.—P. 416.

6. **Same—Two Instruments—Revocation.**

Testator devised his estate to trustees to hold for a time in trust for the legatee, with provisions for succession and remainder in the event of the death of the legatee;. and, by a second will, devises the same property to the same party named as beneficiary in the first will, with the qualification that she takes it according to the conditions of a previous will. Only the two wills were found, the former one being in the hands of one of the executors. Held, that, instead. of the latter will being inconsistent with the former, the previous will is a necessary adjunct to the later one for the purpose of determining the character of the estate to be vested in the legatee and the condition upon which it would become absolute, and therefore the two should be admitted to probate as one will.—P. 417.

*Appeal from the County Court of the City and County of Denver.*

*Hon. Ben B. Lindsey, Judge.*

Petition by Henry Hanington for the probate of the will of James W. Westlake, deceased. Carrie W. Westlake and others filed objections. From an order admitting two certain instruments to probate as the will of said testator, objectors appeal.

*Affirmed.*

Messrs. YEAMAN & GOVE, and Mr. HENRY B. BABB, for appellants.

Mr. WILLIAM L. DAYTON, Mr. WILBUR F. DENNIS, and Mr. CASS E. HARRINGTON, for appellees.

Mr. JUSTICE BAILEY delivered the opinion of the court:

On Sept. 5th, 1903, an instrument appearing to be the last will and testament of James W. Westlake, deceased, was offered in the county court of the city and county of Denver for probate. This instrument purports to give, devise and bequeath unto Lydia Moudy, Henry Hanington, Jr., and to Julius Rodman, and to the survivors of them, the entire estate

of which decedent should die seized and possessed, "in trust, nevertheless, for Helen Celestine West-lake, a girl now in her ninth year of age, and now living with me and who was raised by myself and my wife, Nellie Westlake, lately deceased, until said Helen Celestine Westlake shall attain the age of thirty years, at which time all of said property and the income thereof which shall then remain on hand shall, by said trustees, their survivors and the survivor of them, be turned over and delivered and conveyed to said Helen Celestine Westlake."

There are appropriate provisions for the settlement and distribution of the estate in the event of the death of Helen Celestine Westlake before reaching the age of thirty years.

This document was executed on the 18th day of April, 1898. On Sept. 5th, 1903, the petition of Henry Hanington was filed in the county court, said petition calling attention to the death of decedent, the leaving of this last will and testament, and other essential matters, and praying that the will might be admitted to probate.

On the same date the court entered an order reciting the presentation to the court of the document and ordering the issuance of citations to the legatee and heirs at law.

On Sept. 16th, 1903, the following document was offered for probate:

"In the name of God, Amen! I, James W. Westlake, being of sound mind and memory, but knowing the uncertainty of human life, do now make and publish this my last will and testament, that is to say: That I do hereby give and bequeath to my daughter Celestine Helen Westlake, all my earthly possessions according to condition of a will now in existence, and unless otherwise bequeathed later.

"JAMES W. WESTLAKE. (Seal)"

Dated the 30th day of October, A. D. 1899, and properly witnessed.

On the same day a supplemental petition was filed with a copy of this last instrument attached, reciting the finding of this instrument after the filing of the original petition, and praying that the two instruments might be admitted to probate together as constituting the last will and testament of said deceased.

Hanington also filed a statement, under oath, wherein it is recited, after mentioning the issuance of the citation hereinbefore mentioned, "that of the parties to whom such citation was issued, Carrie Whitney, the sister of the defendant, resides in the city of Kansas City, in the state of Missouri, and cannot be found in the state of Colorado: that Gladys Talmage and Benjamin Talmage, minor heirs at law of said deceased, cannot after due diligence and inquiry be found in this state, and petitioner is informed and believes, and so states the fact to be, that said minors reside at present in the state of California," and praying that an order be entered authorizing the citation of these parties by publication, in accordance with section 25 of the act of 1903. On the same day an order authorizing the publication as prayed for in the petition was made.

On October 8th, William L. Dayton was appointed guardian *ad litem* of Gladys and Benjamin Talmage, Henry B. Babb as guardian *ad litem* for Helen Celestine Westlake, and citations were issued to said guardians *ad litem* and duly served.

On Oct. 9th, affidavit of publication was made.

On Feb. 1st, 1904, Carrie W. Whitney and Harry Westlake filed their *caveat* and objections to the probate of the will, alleging, among other things, that the court did not have jurisdiction of the minor heirs; that the will first presented was revoked by the one

last presented, and that the last will was so incomplete, indefinite and uncertain that "it is not possible to ascertain the intention of the deceased therefrom."

Feb. 1st, 1904, Gladys Talmage and Benjamin Talmage, by their guardian *ad litem,* filed a *caveat* and objections practically identical with those filed by Carrie Whitney and Harry Westlake. These objections were traversed. On the 17th of March an order was entered, finding that the. publication of notice had been made and that the several parties had been duly summoned according to law.·

On April 12th, 1904, the county court made a decree admitting to probate the two instruments as together constituting the last will and testament of James W. Westlake, and appointing the trustees named in the first instrument as executors.

The matter was brought here upon appeal by the heirs at law.

The first alleged errors discussed by appellants are to the effect that the court did not have jurisdiction of the minor heirs, for the reason that sections 24 and 25 of the Wills Act of 1903 was not complied with. Sections 24 and 25 provide:

Section 24. "Upon the production of any last will for probate, the court shall ascertain from the will and from such other satisfactory evidence as may be produced, the names and places of residence of the      *      *      *      heirs at law of the testator, and who of such heirs at law,      *      *      *      if any, are minors, and the names and places of residence of the guardians of such minors, if any there be; and thereupon a citation shall issue to such      *      *      *      heirs at law, or in the case of any minor to such minor and to his or her guardian,      *      *      *      requiring them and each of them to attend the probate of such will before the court."

Section 25. "If it shall appear that any such * * * heir at law of such testator resides or hath gone out of this state, or that any such * * * heir at law, upon diligent inquiry, cannot be found, the judge of the county court shall cause to be published * * * in some newspaper * * * a notice addressed to such non-resident, * * * setting forth the presentation of such will for probate, * * * and requiring such heirs at law to attend the probate of such will."

The contention of appellants seems to be that the order for publication could not be made until after the issuance and return of the citation, and that no citation was issued and returned until October 8th, the order for publication having been made Sept. 16th. It is also asserted that the affidavit of the non-residence of the minor heirs is defective, because it is stated upon information and belief that they resided in California. The words of the statute are: "If it shall appear that any such * * * heir at law * * * resides or hath gone out of this state * * * or . * * * upon diligent inquiry cannot be found," then publication may be made.

The affidavit is sufficient. It alleges that the minor heirs cannot after due diligence and inquiry be found in this state. That is all that is required. The allegation, made upon information and belief, that they resided in the state of California, is unnecessary to give the court jurisdiction to issue the order of publication. A careful scrutiny of the two sections will demonstrate that the order for publication is in no way dependent upon the previous issuance and return of the citation. When it is shown to the court at any stage of the proceedings that either of the heirs at law, "upon diligent inquiry, cannot be found," the court has the power to issue the order of publication.

Consequently, we find that there was no error in this respect.

Having thus disposed of the question of jurisdiction, the next one presented is as to whether or not two instruments, each purporting to be the last will of a decedent, may be admitted to probate as forming together one last will and testament. While it is generally conceded by the authorities that under certain circumstances this may be done, there is much nice distinction in the reported cases, and in the reasoning of law writers, as to what peculiar conditions and circumstances must exist in order that the two instruments may be admitted.

It is unnecessary in this case to analyze the various authorities for the purpose of determining the great variety of circumstances under which two such instruments have been admitted to probate.

The rule as announced in Williams on Executors, 7 Am. Ed. 212, appears to be the consensus of opinion upon this subject.

"The mere fact of making a subsequent testamentary paper does not work a total revocation of a prior one, unless the later expressly or in effect revoke the former, or the two be incapable of standing together; for though it be a maxim, as Swinburne says, that 'no man can die with two testaments,' yet any number of instruments, whatever be their relative dates, or in whatever form they may be (so as they be all clearly testamentary), may be admitted to probate as together containing the last will of the deceased. And if a subsequent testamentary paper, whether in form a will or a codicil, be partially inconsistent with one of an earlier date, then such later instrument will revoke the former as to those parts only where they are inconsistent."

See, also, the authorities cited in notes O and P, at page 212 of the work cited.

We now come to the determination of the question as to whether or not the court erred in admitting to probate these two particular instruments together as constituting the last will and testament of decedent.

In this connection we may say, that while it is not the policy of the courts to strain to admit wills to probate, neither is it the policy of the courts to strain in order to refuse the probate of a will. If the testator has testamentary capacity, and the mind is free from improper influences, and the will is intelligible, it should be admitted to probate. Every effort is to be made to execute the intention of the testator, and captious or specious reasoning shall not be indulged in for the purpose of creating a doubt where none exists, or rendering that unintelligible which is intelligible. Otherwise, the statute of wills becomes a mockery and the learning expended upon it becomes as salt which has lost its savor, fit only for the rubbish heap.

The last will provides: "I do hereby give and bequeath to my daughter Celestine Helen Westlake, all my earthly possessions, according to the condition of a will now in existence."

This clearly refers to some other will which is not to be construed as being revoked, but the provisions of which are to be considered in determining the character of the estate which the testator desires to vest in the legatee. In order to determine the character of such estate, it is necessary to find "a will now in existence" which makes provision as to the character of such estate.

The earlier will which was admitted to probate is found in the hands of one of the executors, and it makes full and complete provision for the manner in which this estate is finally to become vested in the legatee. No other will is found. No other will is

proven or attempted to be proven as having been in existence at the time of the making of this will. Therefore, we are driven to the conclusion that the will which was found is the one referred to by the testator.—*Maddock v. Allen, Deane & Swabey,* 332; 1 Redfield on Wills, 262.

The two are to be taken together as forming one will, unless the circumstances under which the last will was made prohibit such a condition, or the conditions of the two wills are so repugnant and inconsistent that they may not stand together. In this connection, we will say that the court erred in striking out the testimony concerning the conversation that took place at the time of the execution of the last will, and the testimony of witness Hanington. The conversation was a part of the subject-matter and was admissible for the purpose of determining the intention of the testator in relation to the will which was then in existence and of the facts and circumstances attending the execution of the wills.—1 Underhill on Wills, 39.

This last will is spoken of as a Masonic will. What is meant by that term is not shown, but it was apparent that the making of the will was in some way connected with the rites and ceremonies of the Masonic order, and in this connection the witnesses testified that they were joking the testator about the length of time it took to write the will, to which he replied that he had made a former will and he desired this to agree with it.

This brings us to the consideration of the proposition so earnestly contended for by appellants, that the later will revoked the former. The conversation referred to and the terms of the will itself clearly negative such an intention. The terms of the two wills are not inconsistent. The first devises the estate to trustees to hold for a time in trust for the legatee,

with provisions for succession and remainder in the event of the death of the legatee. The second will devises the same property to the same party as the one named as beneficiary in the former will, but the estate devised is not an absolute one *in fee simple,* but is qualified, the qualification being that she takes it according to the condition of a previous will.

So, instead of being inconsistent, the previous will is a necessary adjunct to the later one, for the purpose of determining the character of the estate to be vested in the legatee and the condition upon which it would have become absolute.

In the case of *Newcomb v. Webster,* 113 N. Y. 196, after stating that it was a well settled rule that a will and a codicil are to be construed together; that the codicil is no revocation of the will further than is so expressed, but if it is found to contain repugnant bequests, one or the other must fail; it is then said:

"The same principle applies with greater force where there are two distinct instruments relating to the same subject-matter. In such a case an inconsistent devise or bequest in the second or last instrument is a complete revocation of the former. But if part is inconsistent and part is consistent, the first will is deemed to be revoked only to the extent of the discordant dispositions, and so far as may be necessary to give effect to the one last made." Citing *Nelson v. McGiffert,* 3 Barb. Chancery, 158.

It is not the province of the court in this proceeding to construe the two instruments except so far as may be necessary to determine whether or not the court erred in admitting them to probate, and for this purpose we may examine them to determine whether or not they are so repugnant and inconsistent as to prevent their probation.

No such inconsistency exists. It is therefore apparent that the court had jurisdiction; that the will

of 1898 was the one mentioned in the will of 1899; that the will of 1899 does not revoke, but on the contrary ratifies and reaffirms, the will of 1898; that the two are not so inconsistent or repugnant as to prohibit their standing together; it necessarily follows that the court committed no error in admitting them to probate, and that a discussion of the other matters referred to in appellant's brief will serve no useful purpose. The judgment is therefore affirmed.

*Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GODDARD concur.