Argued January 28, affirmed February 9, 1915.

## IN RE ELY'S ESTATE.*

(146 Pac. 89.)

**Wills—Proceedings for Probate—Evidence—Revocation.**

1. In proceedings to annul the probate of a will, because of the existence of a later will, evidence *held* to show that the testator knew that the printed revocation clause was in the later will, so that it was not a codicil, but revoked the former will.

**Wills—Parol Evidence—Varying Will.**

2. A will which is direct and positive in its terms, without ambiguity either patent or latent, cannot be varied by parol evidence of a mistake.

**Wills—Express Revocation—Incomplete Will.**

3. A subsequent will containing an express clause of revocation revokes a former will, though it does not dispose of all of testator's property.

   [As to revocation of wills, see notes in 45 Am. Rep. 338; 28 Am. St. Rep. 344.]

**Wills—Parol Evidence—Declaration of Testator—Revocation.**

4. An unambiguous will which contains an express clause of revocation cannot be varied by parol declarations of the testator that a previous will was to remain effective.

--------

*The authorities on the question of the revocation of a will by a subsequent one are gathered in a note in 37 L. R. A. 561.

                                          REPORTER.

From Clackamas: James U. Campbell, Judge.

Department 2.    Statement by Mr. Justice Harris.

George D. Ely died August 6, 1912, in Los Angeles County, California, and at the time of his death was a resident of that county.    His estate consisted of both personal and real property.    He owned real property located in Clackamas and Multnomah Counties, Oregon, as well as certain lands situated in Los Angeles County, California.    He did not leave any children, but the immediate relatives surviving him are his wife, Clara E. Ely, his mother, Mary E. Ely, a brother, John K. Ely, and four sisters.    George D. Ely left two wills.    The first bears date October 24, 1908, and by its terms bequeaths $50, and no more, to his wife, Clara E. Ely; makes his mother, Mary E. Ely, the residuary legatee and devisee; provides that, if the mother dies before the testator, then his brothers and sisters, or their heirs, shall take all that remains after payment of the legacy given to the wife; appoints John K. Ely executor as to the property in Oregon, and designates a brother-in-law, Charles J. Wilson, as executor of the property in California.    The second will was executed July 30, 1912, and is as follows:

"The Last Will and Testament.

"In the name of God, Amen: I, George D. Ely, of Gardena, County of Los Angeles, State of California, of the age of 53 years, and being of sound and disposing mind and memory and not acting under duress, menace, fraud or undue influence of any person whatever, do make, publish and declare this my last will and testament in the manner following, that is to say:

"First.    To my wife, Clara E. Ely, the sum of three thousand ($3,000.00) dollars—this sum to be secured by the sale of that certain five acres of land described as follows: Beg. at the N. W. cornor of lot 'C' of

Thorpe's subdivision of lot 52 of the Gardena tract, as per map recorded in Book 3, page 16 of Maps, records of Los Angeles County, State of California, said corner being in center line of Olive Street, th– S'ly along the N. line of said lot 8 the center line of said street 322.47 ft. th– S'ly parallel with the westerly line of said lot 675.41 ft. to southerly line of said lot—th– westerly along south line of said lot to the S. W. corner thereof—th– northerly along the westerly line of said lot to beg. and containing five acres more or less computed to center of adjacent streets.

"Secondly. All moneys accruing from the sale of said five acres over and above the above bequest to my wife—and the payment of the mortgage of $600.00 now a lien—shall be used first for the payment of the expenses of my sickness and death—and second to my sisters Italina Bauernfiend, Viradell E. Waters, Nora E. Wilson and Mollie E. Wilson and my brother John K. Ely—in equal shares.

"Lastly. I hereby nominate and appoint Charles J. Wilson of Ocean Park, California, the executor of this my last will and testament and hereby revoke all former wills by me made.

"In witness whereof, I have hereunto set my hand and seal this 30th day of July, in the year of our Lord, nineteen hundred and twelve."

Charles J. Wilson, on September 11, 1912, filed a petition in the Superior Court for Los Angeles County, asking that the will dated July 30, 1912, be admitted to probate; and on October 11, 1912, the instrument was admitted to probate, and letters testamentary were thereafter issued to Charles J. Wilson.

John K. Ely, on September 23, 1912, filed a petition in the County Court of Clackamas County, asking the court to receive as the last will and testament of deceased the instrument dated October 24, 1908; thereupon this document was probated in common form, and John K. Ely was appointed executor.

Thereafter, on February 28, 1913, Clara E. Ely commenced a proceeding to revoke the order made by the County Court of Clackamas County, and to have the instrument dated July 30, 1912, adjudged the last will and testament of deceased instead of the one dated October 24, 1908.

The County Court annulled its previous order admitting the first will to probate, and adjudged that the document dated July 30, 1912, was the last will of deceased, and accordingly admitted the same to probate. This decree was thereafter affirmed by the Circuit Court, and the cause is here on appeal from the ruling of the latter court.          Affirmed.

For appellants there was a brief with oral arguments by *Mr. Claude W. Devore* and *Mr. C. M. White.*

For respondents there was a brief and an oral argument by *Mr. Arthur I. Moulton.*

Mr. Justice Harris delivered the opinion of the court.

For the sake of brevity the instrument dated October 24, 1908, will be referred to as the first will, and the document bearing date of July 30, 1912, will be referred to as the second will. It will be observed that the second will contains the following: "Do make, publish and declare this my last will and testament," and "I hereby nominate and appoint * * the executor of this my last will and testament." The controversy between the litigating parties gives especial prominence, however, to the following language employed by the second will: "And hereby revoke all former wills by me made."

The appellants contend that the revocation clause appearing in the second will is the result of inadvertence and mistake, and that the testator intended and believed that the first will continued as a subsisting instrument, but modified and limited, however, by the second will.  In the view of appellants the second will is to be regarded as a codicil, rather than as a substantive will, and they therefore urge that the two documents should be received and construed as one will, with the revocation clause eliminated.

. 1. For the purpose of showing that the revocation clause appears in the second will because of a mistake, the appellants, over objection, offered parol evidence of oral declarations made by the testator both before and after the execution of the second will.  These oral declarations were, in substance, that he had made a will in Oregon; that he was sorry that he had made that will; that he had not done right by Clara; that he wanted to let that will stand just as it was, but that he was going to make another will of the property in Gardena; that he was going to do the right thing by Clara in the latter will; that he had always promised her a home, and he was going to give her a home; that he had changed his will, and had "willed his wife $3,000 outright"; that the Oregon will "would stand."

George D. Ely at the time of his death was about 53 years of age.  He had a fairly good education, read the newspapers, and kept himself posted, had been a farmer, had conducted a store about ten years, had been a notary public, and, as such, had transacted such business as is usually done by a notary public.

A printed form was used in preparing the second will.  The revocation clause is printed, and so are the words ''my last will and testament.''  The blanks were filled in by another person, but the testator dic-

tated all that was written in, and during part, if not all, of the time "looked over" the will while the writing was being done. It is the uncontradicted evidence that after the paper was prepared, and before he signed it, the document, in its entirety, was read over to him. The testator was in possession of his mental faculties at the time of making the will, and gave to the transaction the care and attention usual in like cases; and in view of his business experience, together with the fact that the instrument was read over to him, it is far more reasonable to conclude that the testator knew that the revocation clause appeared in the will.

The facts in this case are not like *Goods of Moore* (1892), L. R. P. D. 378, where the printed words containing the clause of revocation were not read; nor analogous to *Goods of Boehm* (1891), L. R. P. D. 247, where the draft was not read over, but an epitome was; or similar to *Goods of Oswald,* L. R. 3 P. & D. 162, where the revocation clause was not read by or to the person who signed. The case in hand is quite different from *Whitney* v. *Hanington,* 36 Colo. 407 (85 Pac. 84), where there was no revocation clause.

2. The second will is direct and positive in its terms, and is without ambiguity either patent or latent. The general rule is that extrinsic evidence is not admissible to prove and correct an alleged mistake of the testator in the will: 40 Cyc. 1436; 17 Cyc. 636. While it is true that there are cases holding that a revocatory clause is not always imperative, nevertheless an examination of those cases will in most, if not all, instances, disclose differentiating features.

3. It is true that the second will does not by its terms dispose of all the property owned by the testator; but "a will may be revoked by a subsequent will containing an express clause of revocation, although

the will containing such clause of revocation makes no disposition of the property embraced in the former will; and, where such is the case, it is immaterial whether or not the later will is inconsistent with the earlier'': 40 Cyc. 1174.    To eliminate the revocatory clause would be to take from the will that which the testator must have known was there, and therefore is to do that which is the very antithesis of his express direction.

4. The court cannot make for the testator a new and different will; nor can the will in this instance be varied by the parol declarations of the testator: *Dunham* v. *Averill,* 45 Conn. 61 (29 Am. Rep. 642) ; *Kinney* v. *Kinney,* 34 Mich. 250; *Zimmerman* v. *Hafer,* 81 Md. 347 (32 Atl. 316) ; *Walston's Lessee* v. *White,* 5 Md. 297; *Hawman* v. *Thomas,* 44 Md. 30; *Defreese* v. *Lake,* 108 Mich. 415 (67 N. W. 505, 63 Am. St. Rep. 584, 32 L. R. A. 744) ; *Fry* v. *Fry,* 125 Iowa, 424 (101 N. W. 144) ; *Napier* v. *Little,* 137 Ga. 242 (73 S. E. 3, Ann. Cas. 1913A, 1013, 38 L. R. A. (N. S.) 91).

The decree is affirmed.    AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BEAN concur.