# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1898.

### HARRISON v. HARRISON et al.

1. A will by which land is devised to named legatees, "to have and to hold in common for a home and support so long as they remain together; should one or more leave they can take such as is given them individually in this will, but have no share or control of this that is given in common, without the consent and signature of those that remain on the place," with restrictions on the power of either to alienate or lease any part of the land without the consent of all, constitutes the legatees named tenants in common in the land devised, with a condition subsequent that the whole land be used for the support of such of the named legatees as choose to reside on the place.
2. If for any reason the condition becomes incapable of performance, it will be rejected, and the devise will be held to be absolute. Accordingly, if one or more of the legatees be forced to remove from the land by the cruel treatment of another, the condition imposed by the will becomes impossible of execution, and the use of the land follows the title divested of the condition.
3. The petition in this case contains averments sufficient, if proved, to authorize a recovery of some amount from one of the defendants, and it was error to dismiss it on demurrer.

Argued June 24,—Decided October 3, 1898.

Equitable petition. Before Judge Callaway. Washington superior court. September term, 1897.

*Evans & Evans* and *J. A. Harley,* for plaintiff.
*R. H. Lewis* and *J. K. Hines,* for defendants.

LITTLE, J.    Mary J. Harrison filed her petition in the superior court of Washington county, making in brief the following case:    In July, 1877, the will of her father, Wm. D. Harrison, was admitted to probate and letters testamentary were issued to Wm. T. Harrison and Seleta L. Harrison.    After providing for a number of specific legacies to several of his children, the 13th item of the will is in the following language:    "That all of my lands and other property, after the above-named bequests have been settled, I give and bequeath to my five children that remain with me, to wit: Seleta L., Emma S., Martha W., Mary J., and William T., to have and to hold in common for a home and support so long as they remain together.    Should one or more leave, they can take such as is given them individually in this will, but have no share or control of this that is given in common, without the consent and signature of those that remain on the place. No one or more shall sell, lease, rent or in any way convey to any other than those that remain on the place, without the signature of the five named in this item."    The petition alleges that the realty on which item 13 operated consisted of a tract of land lying in Washington county containing four hundred acres (fully described), and also another tract of land in Johnson county containing two hundred acres (also fully described), and that the personal property was of the value of fifteen hundred dollars.    The petition also sets out as a fact that W. T. Harrison has had the exclusive management and control of the property referred to in item 13 since his qualification as executor in July, 1877, and that he has made no annual returns.    It also alleges that W. T. Harrison has received from the property referred to in item 13 the sum of twelve hundred dollars which he has invested for his own use and benefit, and denies to petitioner the right of participating therein.    It also alleges that Wm. T. Harrison, from the rents and profits of the property referred to in item 13, has purchased two tracts of land in Hancock county, and that at the request of W. T. she and her sisters who are named in the 13th item, in 1894, empowered said W. T. to sell the Johnson county land, which he did for five hundred dollars, but has not accounted to her for any of the purchase-money.    It is also alleged that the affairs of the testator have long since been

settled and there is no legal obstacle in the way of a final distribution. The petitioner also alleges that she lived on the land named in this item, which was the W. D. Harrison home place, with the said W. T. Harrison and her sisters Seleta L. and Emma, from the death of her father until July, 1895; that her treatment by her brother, W. T., was so cruel and unpleasant that she was forced to leave said land and reside with her sister, and that since her removal the defendants have set up an adverse claim to the home place, and pretend that petitioner forfeited her interest in that portion of the land known as the home place, by her removal therefrom. The petitioner makes W. T. Harrison and Seleta L. Harrison defendants, and prays that they come to a full and complete accounting of the rents, issues and profits of the property embraced in the 13th item of the will, and the court decree that the defendants pay over to petitioner her share of such rents and profits; and she prays that she have a special lien for said sum on the land lying in Hancock county, purchased by the defendant W. T. with the funds arising from the estate of W. D. Harrison. Petitioner also prays to recover her share of the home place, with reasonable rents since July, 1895.

To this petition the defendants demurred on the following grounds: The petition sets out no cause of action. The petition shows that the petitioner has no interest in the land and other property devised and bequeathed in the 13th item of the will. Because Martha W. Duggan and Emma S. Harrison, sisters of petitioner, named in the 13th item, are not made parties defendant. Because petitioner does not set out any definite sum due her by defendants. Because petitioner having assented to the terms of the 13th item from the probate of the will until July, 1895, she is now estopped from claiming contrary thereto. The demurrer was sustained and the petition was dismissed. At the September term, 1897, by leave of the court the petition was amended, and at the same term the defendants also by leave of the court amended their demurrer. Petitioner excepted, and assigned as error the ruling of the court in allowing the demurrer to be amended and in sustaining the demurrer to the petition.

1. Questions affecting the construction of this will were be-

fore this court in the case of *Duggan* v. *Harrison, 97 Ga.* 738.
That decision grew out of an application on the part of Martha.
W. Duggan, one of the legatees named in the will, to bring W. T.
and Seleta Harrison, as executors, to a settlement before the or-
dinary.    The decision in that case ruled the following proposi-
tions:    1. The executor and executrix, by living upon the land.
and permitting the other devisees to do so, assented to the legacy
in so far as the income was concerned, and all of these parties.
accepted the legacy to this extent.    2. If Mrs. Duggan was en-
titled to any of the rents and profits which accrued during the
period of her voluntary absence from the land, her claim is not.
against the estate, but against the other four as individuals.    3.
The case did not involve a ruling on the question as to whether
the other legatees were liable to her.    On the latter point Mr.
Justice Lumpkin, who delivered the opinion of the court, says:
"The terms of the will, so far as it relates to this land, are pe-
culiar, and it is quite a difficult matter to determine what is the
precise interest of Mrs. Duggan, either in the land itself or in
its income during the period whilst she was absent from the
premises and the other devisees remained upon, used and en-
joyed the property in common.    We are quite certain, however,
she has no right to demand of W. T. Harrison and Seleta, in
their representative capacity, an accounting as to the income of
the land during the time she was absent."

Under the case made here we are called on to determine the
rights of the plaintiff in this land under the terms of the will, as.
affected by the allegations made in the petition.    It will be seen
by reference to the petition that the action is brought against the
persons named as executor and executrix of the will, but not in
their representative capacity.    Indeed while Seleta L. Harrison
is made formally a party defendant, no specific prayer for relief
is made as against her.    As said by Mr. Justice Lumpkin, the
language of the 13th item of the will is peculiar, and it is diffi-
cult to carry into effect the evident intention and wish of the
testator, and at the same time preserve to the legatees their ab-
solute legal rights under the instrument.    It would seem that
some of the language used in making the devise evidences an in-
tention to create an estate in joint tenancy.    This estate only

exists when the tenants have one and the same interest arising by the same conveyance, commencing at the same time, and held by one and the same undivided possession.	2 Bla. Com. 180. So far these incidents are present. But the principal incident to an estate in joint tenancy is the right of survivorship, which under no fair construction of this item can be found to be present. However, we will not enter into a discussion to determine whether the will created an estate in joint tenancy, for while we do not think it does, yet if it could be construed to do so, such estates are abolished by our statute and must be held to be tenancies in common. Civil Code, § 3142. By reference to the will as a whole, it will be found that the expressed intention of the testator, as set out in the preamble, was to divide the property "among my children as equitable as the nature of the case will admit, some having received more than others, and some having been with me longer and some having done more for me than others." Again, in item 2 of the will, the testator directs "that my property and effects be divided among my children in the following order." Coming now to the point of difficulty, the 13th item, the words preceding those which fix the character of the estate devised are, "that all of my lands and other property, after the above-named bequests have been settled, I give and bequeath to my five children that remain with me, to wit"; so that it can not be doubted that it was the intention of the testator to give to each of the children named in the 13th item of his will equal shares in the property therein described. It is true that the words used in fixing the estate of each limits the use of the property so devised. Each of said children is "to have and to hold in common for a home and support so long as they remain together. Should one or more leave, they can take such as is given them individually, . . but have no share or control of this that is given in common, without the consent and signature of those that remain on the place." If it be contended from this language that when one or more of the legatees remove from the place, the removal works a forfeiture of their estate in the land theretofore devised, the reply is, that forfeitures are not favored, and while it is the duty of the courts to give effect to the inten-

tion of the testator, a forfeiture will not be decreed unless expressed in plain and unambiguous language. We do not construe this language to work a forfeiture by removal from the place. The property is given to the children "to have and to hold . . for a home and support so long as they remain together." Suppose all of the children should remove from the land, it would hardly be claimed that the last one to remove took an estate in fee in the whole of the land; and yet such would be the only logical conclusion of the contention that the removal by one from the land forfeited all his interest therein; because when all had removed save one, that one, under the contention, would have the whole land, and title would vest in him, and as there is no limitation over, the right of disposition would rest in him. As we construe this item, it vests in the five children named equal interests in the land and other property covered by this item, as tenants in common. So long as any of the named children remain on the home place, the rents, issues and profits of the place are to be used exclusively for the support and maintenance of those who remain. When the place is abandoned by all, the property is relieved from this charge and the devisees are entitled as tenants in common to its control and disposition.

It is not an uncommon thing for devises to be made on a condition requiring residence in some particular place or some particular house. The rule is, that all such conditions are to be reasonably interpreted if possible, or else pronounced void as unreasonable of themselves and obnoxious to public policy. This latter view is tenable where the restraint must so operate as to involve the donee in some breach of permanent duty; as, for example, in compelling married persons to live apart. On this subject it is said in Schouler on Wills (2d ed., § 604): "Ordinarily, one who is to be supported under a provision in a will is not limited to live in a particular place, especially if there be good reason for leaving it. But a condition that an infant shall live during minority with a suitable person named as sole guide and guardian, may be upheld under most circumstances"; and that "a condition not uncertain or ambiguous happens to be injudicious is an insufficient reason for setting it aside, but all conditions should be justly and reasonably construed." If the

terms of this will are to be so construed as that the condition of residence was required in order for the estate to vest, even then such condition would be liberally construed. In the case of Fillingham v. Broumley, Turn. & R. 530, Lord Eldon said: "Suppose the devisee had been a member of parliament, and had had a house in London, would you say that he did not live and reside at J.?" "Even should the devisee be required to reside in the house during a defined period, or to make it his principal or usual place of abode, the condition may still be frustrated, for personal presence in a specified place for any part of a day is sufficient residence for that day; and it is not necessary to pass the night of that day there." Jarman, Wills, *901, citing Kay, 534; 24 Beav. 430; 25 Ch. D. 605. But as we have before said, we do not construe the terms of this will as vesting an estate in these children on condition that they live on the place, which is to be forfeited by removal. As we construe its terms it vests an absolute estate in each of these children, but while any one or more of the five remain on the land the profits arising therefrom shall be devoted to the support of those who so remain. For the testator's intention to qualify reasonably what he chooses to dispose of is not incapable of taking effect when not contrary to law, and a devise absolute in terms may be modified in effect by other clauses of the will and restrict the gift in accordance with his intention. Schouler, Wills, §§ 599-602.

It will be noted that the plaintiff alleges she lived on the home place with her brother and sisters from the death of her father until July, 1895, and that her treatment by her brother W. T. was so cruel and unpleasant that she was forced to leave the land and reside elsewhere. If these allegations be true, then such forced removal is not to be counted against her. She had the same right under the will to reside on the land as her brother had, and he as much right as she had, and if the conduct of either toward the other was such as with due regard to personal comfort required one to remove, then it may well be held that the use contemplated by the testator was impossible of performance, and in that event the devisees would be entitled to immediate possession of the estate, divested of the right of use as prescribed in the will. Conditions subsequent are construed bene-

ficially, in order to save if possible the vested estate or interest, and if such condition prove illegal or incapable of performance, whether as against good morals or as impossible under any circumstances, or is rendered impossible in a particular case and under existing circumstances, the gift, whether of real or personal property, relieved of the condition, becomes absolute in effect. Jarman, Wills, *848-850; 35 Beav. 312; 4 Ch. D. 272; 33 Mich. 78; 4 Kent, Com. 130. And Prof. Schouler in his work on Wills says, that "public policy may constitute an element in such cases besides; and as conditions are here construed into conditions subsequent rather than precedent,—for conditions precedent are never favored in the construction of wills,— the impossible, illegal or impolitic condition being rejected, the gift stands absolute"; and he further says that "a will, of all writings, deserves the most flexible interpretation which can lay open the mind of its maker." § 600.

The testator devised this property in equal interests to his named children, but intended that those of them who chose to do so should reside on the land and receive an equal part of the rents and profits of the property devised. This right vested equally in each of these named children, under the will. If by disagreement among themselves it became impossible for the use to continue, if by the conduct of one any other of them was forced to leave, possessing an equal right with the others, that one could not be legally deprived of the benefit which the testator intended him to enjoy. It will not do to say that the one so compelled to leave would have a right of action to recover his damages against that other for his eviction; because he was entitled to live on that place and have a home there, and the deprivation of this right is contrary to the will of the testator; and that intention being thus impossible of performance, such devisee is entitled then to have the full and absolute use of the estate devised to him. For such right the only method of enforcement is to have his estate free from the condition imposed; and if it is found to be true that the petitioner was subjected to annoyance and bad treatment on the part of one of the other devisees having equal but no more rights than hers, she is entitled to her estate free of the condition. Indeed we might go further and say

that the provision for home and support was intended by the testator to be a reasonable one; and if such could not be afforded from any cause,—the unproductiveness of the land, the incapacity of the dwelling-house to afford suitable shelter, or other similar causes,—the condition would be held to be impossible of performance and be therefore defeated.

Sufficient averments are made in this case, if proved, to defeat the condition attached to the devise, that is, that the property devised should be used for a home and support for the five children named. In that event the petitioner would have the right to immediate possession of that portion of the estate devised to her, and could exercise the right of partition, or seek any other remedy afforded to a tenant in common. She could not, however, have any partition under the proceeding instituted in this case, if for no other cause than for the want of parties. She, however, alleges in the petition, that one of the defendants, W. T. Harrison, has received the sum of five hundred dollars from the sale of the Johnson county land, sold by the consent of all of the devisees, and in which she alleges she has a fifth-interest. She also alleges that he has received the rents and profits of the home place in which she has an interest. The allegations in the petition are sufficient to allow it to be held in court, at least to recover such of these items as she is entitled to receive from the defendant; and limited as it may be in this respect, the petition sets forth a legal cause of action to recover such interests, and the court erred in sustaining the demurrer thereto.

*Judgment reversed. All the Justices concurring.*