### LUCAS v. SCOTT et al.

(Circuit Court of Appeals, Ninth Circuit. January 8, 1917.)

#### No. 2840.

1. WILLS ⬥440—CONSTRUCTION—INTENTION OF TESTATOR.

The cardinal rule for the construction of wills is to ascertain the intention of the testator, which is to be found from the language of the will and the entire context thereof, and not from isolated provisions or expressions; and, having ascertained the general purpose of the testator, the court is to be guided by that, rather than by arbitrary or technical rules.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 956; Dec. Dig. ⬥ 440.]

2. WILLS ⬥602(1)—CONSTRUCTION—DEVISE OF LAND.

A testator, who owned a tract of land then under lease for 25 years, provided by article 1 of his will that one-third of the rental should be paid to his widow and the remaining two-thirds to his "children or surviving children" in equal shares, with a further provision that in case of the death of the widow her share should be equally divided among the children or surviving children. Article 3 provided: "At the expiration of the 25 years lease * * * it is my sincere wish and will that my lands shall befall in equal shares and interest upon my three sons, * * * or then surviving sons or son, provided, however, that at such a time these my sons or son, shall pay to each one of my daughters or surviving daughters the sum of $5,000;" also that in case one or more of the sons should not make such payment the others or other son should "have the right to buy" the whole of the land by making the payments to the daughters and paying the same amount each to the shortcoming sons or son. By article 4 it was provided that, should such payments not be made, the land should be sold or leased, and the money derived from the sale or lease "equally divided amongst my children or their

lawful heirs and assigns." *Held,* that the words "daughters or surviving daughters" in article 3 were used in the same sense as the words "my children or surviving children" in article 1, as meaning the daughters who survived the testator and not those who survived the lease; that the paramount purpose of the testator, as gathered from all of the provisions of the will, was to leave the land to his children who survived him, and to vest an equal estate therein in each, subject to a contingent defeasance, on termination of the lease, of the interest of the daughters and of any shortcoming son by the payment to him of cash by one or more of the then surviving sons, in case any of them should exercise the option.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1351, 1352, 1359; Dec. Dig. ☞602(1).]

3. POWERS ☞28—ASSIGNABILITY.

Under article 3 of said will, construed in the light of its other provisions and of the testator's general purpose and "sincere wish" as therein expressed, the privilege given the sons, or either of them, of acquiring the interests of the daughters in the land, was personal, and not assignable, and a grantee of the sons could not enforce such right of purchase.

[Ed. Note.—For other cases, see Powers, Cent. Dig. § 79; Dec. Dig. ☞28.]

In Error to the Supreme Court of the Territory of Hawaii.

Action by Mary N. Lucas against Walter W. Scott, Janet M. Scott, and Rubena F. Scott, minors, and the Bishop Trust Company, Limited, guardian of their estate. Judgment for defendants, and plaintiff brings error. Affirmed.

This is a writ of error to review the judgment of the Supreme Court of Hawaii upon a case submitted to that court under sections 2381, 2382, and 2383 of the Revised Laws of Hawaii of 1915, upon an agreed statement of the facts. The facts as agreed to are substantially the following: Christian Henry Bertelmann, of Hawaii, died on or about February 15, 1895, being at that time seised in fee of the lands which are the subject of the controversy. He owned other property not involved in the suit. He left surviving him three sons, Frank, Henry, and Christian, and six daughters, Catherine, Angeline, Wilhelmina, Justine, Josephine, and Beatrice, who all still survive, excepting Catherine, who died on or about September 10, 1905, leaving surviving her three children, Walter W. Scott, Janet M. Scott, and Rubena F. Scott, the defendants in error in the present case. Catherine's husband died in January, 1908. The testator's widow died in September, 1915. The Bishop Trust Company, Limited, is the guardian of the estate of the three minors, the defendants in error herein. Bertelmann left a will, which was executed December 12, 1891. The will was admitted to probate April 18, 1895. Mary N. Lucas, the plaintiff in error, has by various conveyances acquired all the right, title, and interest of the three sons and the five living daughters of the testator under the will. On November 1, 1890, the testator leased to the Kilauea Sugar Company all of the lands which are the subject of the present controversy for the term of 25 years from that date, and that lease continued in operation until November 1, 1915. The will contained certain specific devises of property to the widow and to each of the sons and daughters. Then followed the third and fourth articles which contain the provisions out of which the present controversy arises:

"Third. At the expiration of the 25 years lease with the Kilauea Sugar Company it is my sincere wish and will that my lands shall befall in equal shares and interest upon my three sons Frank Charles, Henry Godfrey and Christian Sylvester Bertelmann, or then surviving sons or son. Provided however that at such a time these my sons or son shall pay to each one of my daughters or surviving daughters the sum of five thousand dollars, $5,000. In case one or two of my sons should be at that time, or within a year from that time unable to furnish, produce or raise the necessary amount to pay to

each one of my daughters or surviving daughters his share of the $5,000 per capita, the two or the one of my sons will have a right to buy the whole of my lands now leased to the K. S. Co. by paying:

"1. To each of my daughters or surviving daughters the amount aforesaid of $5,000.

"2. To my shortcoming son or sons the same amount of $5,000 each, being the same share as will be paid to my daughters. By doing so, they my sons or he my son will enter in full possession of all my lands; and their or his right and title will be undisputable, provided they or he (my sons or son) comply and fulfill the above mentioned conditions.

"3. To my wife Susan Bertelmann a life rent of $2,000 per annum. I make the payment of all these amounts above given a charge upon all my estate.

"Fourth. Should none of my sons be able to pay these amounts, then my lands will be sold at public auction, or leased over again according to circumstances and best advantage of my family. The money deriving from said sale or lease will be equally divided amongst my children or their lawful heirs and assigns after the distributive share of dower will have been given to my wife Susan Bertelmann according to law."

Antonio Perry, of Honolulu, T. H., for plaintiff in error.

E. A. Mott-Smith, of Honolulu, T. H., for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). It is the contention of the defendants in error that the words "surviving daughters" in article third relate to the time of the testator's death; that Catherine, who survived the testator, but died before the expiration of the lease, was a surviving daughter within the meaning of that article; that under the will a vested estate, a one-ninth interest, was devised to her which upon her death descended to her three children; that although, if Catherine had survived the expiration of the lease and her interest could have been defeated by the payment of $5,000 to her by her brothers, that interest now vested in the children cannot be defeated, because the condition therein expressed has, by her death before the expiration of the lease, become impossible of performance, and that therefore the three children now own an undivided one-ninth interest indefeasible in the lands mentioned in article third.

The plaintiff in error contends that the expiration of the lease and not the death of the testator is the period of survivorship referred to in the phrase "surviving daughters" used in article third, and that Catherine was not a surviving daughter within the meaning of that article; that the devise to Catherine did not vest an estate in her on the testator's death, but an interest contingent upon her surviving the term of the lease, and upon the nonpayment to her within one year after the expiration of the lease of the sum of $5,000 by the three sons or one or more of them; that, whether the devise to Catherine was vested or contingent, the condition expressed in article third be it a condition of defeasance or a condition of vesting, permitted the sons or one or more of them to pay $5,000 to her or her heirs within the time stated, and that, Catherine not having survived the expiration of the lease, the law does not require the sons or any of them to pay $5,000 to defeat the interest which would otherwise have gone to Catherine; that the children of Catherine have now no right or interest in the property mentioned in article third; that the plaintiff in error, the

assignee of the three sons, is now the sole owner of the lands without making any payment to Catherine's children, and that, even though the correct construction of the will is that the death of the testator was the period of survivorship referred to in article third, and even though the devise to Catherine was of an interest which vested at the time of the testator's death and descended to her three children, that interest was nevertheless defeasible upon payment to them by the sons or one or more of them of $5,000; and that the plaintiff in error is now entitled to defeat that interest by paying the defendants in error before November 1, 1916, the sum of $5,000.

The decision of the Supreme Court of Hawaii, consisting of three judges, one judge dissenting, was that the death of the testator was the period of survivorship referred to, and that Catherine was a surviving daughter; that the devise to her was of a vested interest, defeasible upon the condition stated, which was a condition subsequent; that upon her death her one-ninth interest descended to her three children; that the condition subsequent named in article third required the payment of $5,000 to Catherine personally in her lifetime; that the payments of $5,000 to each of the daughters were not to be made until at and after the expiration of the lease; that by reason of Catherine's death prior to that time the defeasance became impossible of performance, and that the case stands, therefore, as though there were no condition of defeasance, and Catherine's children now own an undivided one-ninth interest in the lands; and that the plaintiff in error has no right to defeat that interest upon the payment of $5,000. The court also held that the privilege granted to the sons to pay the $5,000 to each daughter "seems personal" and nonassignable by the sons.

The defendants in error, in support of their contention, cite the decision of the Supreme Court of the Territory of Hawaii of July 29, 1902, in Bertelmann v. Kahilina, 14 Hawaii, 378, a decision rendered by judges other than those who compose the present court. Frank C. Bertelmann and Henry G. Bertelmann, two of the sons of Christian Henry Bertelmann, were the plaintiffs in that suit, and the defendants were four of the daughters and the widow of the testator. The plaintiffs in that suit claimed to own an undivided one-third in fee simple of the lands described in article third. The defendants denied that the plaintiffs owned such an interest, and alleged that they owned no more than an undivided two-ninths of the estate, and that the defendants, the daughters, each owned an undivided one-ninth, and that the widow was entitled to her dower in said lands. The majority of the court in that case held, one judge dissenting, that the widow took a life estate in one-third of the land, subject to be defeated upon the performance of the conditions prescribed in the third article, in which case she would thereafter have a fixed sum of $2,000 a year, which would be a charge on the land; that the children took equally vested estates in fee, subject to the widow's interest, defeasible as to the interest of the daughters and the shortcoming sons, upon the performance of the prescribed conditions by the other son or sons, the sons having meanwhile contingent devises as to such interests.

[1] The cardinal rule for construing and interpreting wills is to ascertain the intention of the testator. The intention is to be found

from the language of the will and the entire context thereof, and not from isolated provisions or expressions, for it is by all the provisions of the will taken together that the intention of the testator is evidenced. Having become convinced of the general purpose of the testator, we are to be guided by that rather than by arbitrary or technical rules. In Smith v. Bell, 6 Pet. 68, 75 (8 L. Ed. 322), Chief Justice Marshall said:

"The intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law."

See, also, Colton v. Colton, 127 U. S. 300, 8 Sup. Ct. 1164, 32 L. Ed. 138, Hardenbergh v. Ray, 151 U. S. 112, 126, 14 Sup. Ct. 305, 38 L. Ed. 93, and Home for Incurables v. Noble, 172 U. S. 391, 19 Sup. Ct. 226, 43 L. Ed. 486.

[2] Approaching the will under consideration with this rule in view, we find that the testator first makes reference to his land, which consisted of more than 3,500 acres, and which he had leased to the Kilauea Sugar Company for the term of 25 years, commencing November 1, 1890, at the rental of $6,000 per annum. In the first article of the will he devises to his widow one-third of that rental, and to each of his children, or surviving children, the remaining two-thirds thereof, in equal shares, with the further provision that, in case of the death of the widow before the expiration of the lease, her share should be equally divided among the children or surviving children. By this provision the testator clearly expressed his intention to provide for the children who survived his death, out of the rental of the land, in equal shares. The second article refers to land not included in the lease, and provides that it shall be divided into ten lots, one of which was devised to the widow, and one to each of the nine children. The third and fourth articles contain the provisions the construction of which is involved in the present suit. In those provisions is evidenced a general purpose to make equal, or substantially equal provision for all his children out of the land which was subject to the lease. There is also clearly expressed the wish of the testator that the leased land should, after the expiration of the lease, be owned by his sons or one or more of them, for the testator declared:

"It is my sincere wish and will that my lands shall befall in equal shares and interest upon my three sons, or then surviving sons or son."

He goes on to prescribe the method by which they may acquire title, which he declares shall be by paying to each one of his daughters or surviving daughters the sum of $5,000 within a year from the expiration of the lease, and he provides further that, in case one or two of his sons shall fail to make such payment, "the two or the one of my sons will have the right to buy the whole of my lands now leased to the K. S. Co." by making the $5,000 payment to each of the daughters or surviving daughters and to the shortcoming son or sons, and that by doing so "they, my sons, or my son, will enter into full possession of all my lands; and their or his right and title will be indisputable provided they or he (my sons or son) comply and fulfill the above-mentioned conditions." In the fourth article the will provides that, in

case of the failure of the sons to make the payments, the lands "will be sold at public auction, or leased over again, according to circumstances and the best advantage of my family," and that in case of sale there shall be equal distribution of the money derived therefrom "amongst my children or their lawful heirs and assigns."

It will be seen that there are two periods of survivorship mentioned in the will. One relates to the expiration of the lease. The sons "then surviving" are given the privilege to purchase the interest of the daughters. The other relates to the death of the testator. The "daughters or surviving daughters" referred to in article third are not the daughters who shall survive the lease, but those who shall survive the testator. The words "daughters or surviving daughters" there found are used in the same sense as "my children or surviving children" in the second subdivision of the first article. If the testator's purpose had been otherwise, he would have indicated by the word "then" in article third that the surviving daughters whose rights the sons might purchase were those who survived the lease. This purpose of the testator is further evidenced by the provision in the fourth article that, in case of sale of the land at the expiration of the lease, the money derived therefrom shall be equally distributed "amongst my children or their lawful heirs and assigns." There has been much discussion in the briefs of the paramount intention of the testator. The plaintiff in error finds in article third evidence that the principal purpose of the testator was to vest his land in equal shares in his three sons, subject to a defeasance in case of their failure to pay the surviving daughters each the sum of $5,000. That his sons or some of them should own the land in an undivided tract is indeed clearly expressed as the sincere wish of the testator. But we are of the opinion that it was not his paramount wish or purpose. If that had been his paramount wish, the natural and simple method to express it would have been to devise to his "then surviving" sons the whole of the land, subject to a charge in favor of each of his daughters for the sum of $5,000. .

The will taken by its four corners means, we think, that the testator intended thereby to leave his land to his children who survived him, and to vest an equal estate therein in each of them, subject to a contingent defeasance of the interests of the daughters and of the shortcoming sons, by the payment to them of cash by one or more of his then surviving sons, in case they or any of them should exercise their option "to buy the whole of my lands now leased." In other words, the intention of the testator was to leave the land in equal shares to all his children who survived him, subject to the privilege of the sons to buy the interests of the daughters, and not to leave it all to the sons subject to a defeasance as to six-ninths thereof in case they failed to exercise their option. There was no further controlling provision as to the disposition of the estate after the expiration of that period, in case the sons should fail to exercise the option. It was then to be optional with the devisees whether the land should be sold, and the proceeds equally divided, or whether it should again be leased. The wish that the sons, or one or more of them, might acquire the whole tract, however dear it may have been to the heart of the testator, was

expressed in such a way as to give the sons no more than the privilege to acquire the interests of the daughters in the land by complying with a condition precedent. Compliance with that condition was absolutely necessary before the estate of the daughters could vest in the sons, for it is apparent from the will that the testator did not intend that the daughters' estates should vest in the sons unless the conditions were fully and literally performed. The defeasance of the daughters' estate, on the other hand, depended on a condition subsequent, the payment to each of them of a prescribed sum within a fixed period of time. These views are in harmony with what was decided by the court below, and with the decision in the Kahilina Case, and it becomes unnecessary to consider the question whether or not the rule of the latter case became a rule of property as to the rights of any of the parties to the present controversy.

[3] A question more difficult of solution is whether or not the plaintiff in error has acquired the right of the testator's sons to buy the interests of the daughters, and whether Catherine's children may be compelled to convey their interest to the plaintiff in error upon the payment to them of the sum of $5,000. The deeds of Henry and Sylvester Bertelmann to the plaintiff in error conveyed not only the grantors' interests in the land, but the rights, powers, and privileges granted under paragraph third of the will. The title of Frank Bertelmann was obtained under foreclosure of mortgages and by a sheriff's deed. Upon a consideration of the terms of the will, the situation of the testator, his family, and his property, and with the endeavor to ascertain what he intended should be done with his estate, we reach the conclusion that article third was the expression of his desire, not that his sons should be favored in the distribution of his property, but that the title to the land, so held at that time under the lease, should be kept in the male members of his family, and that that was what he meant when he declared his sincere wish and will to be that his lands "shall befall in equal shares and interest" upon his sons, and that the privilege which he conferred upon his "then surviving" sons to buy the interests of his daughters at a fixed price was intended to be personal to the sons, and not transferable to another. It was strictly a family scheme, one purpose of which may have been, and probably was, to offer an inducement to the sons to practice habits of industry and economy, so as to accumulate the money requisite for the purchase of the other interests when the time should come for the exercise of their option. There is in the will no expression of the testator's wish that such a right should go to his then surviving sons and their assigns, although it is to be said that the absence of the word "assigns" is not of controlling effect. But the provision that, in case one or two of his sons should not at that time be able to furnish the amount to pay for the daughters' shares, the other son or sons should have the right to buy the whole thereof, is suggestive of the testator's purpose to exclude strangers from participating in that right of purchase, and to confine it to his sons. He goes on to provide, in substance, that, should none of his sons be able to pay the specified amounts within the time limited, their rights so to purchase shall end, and the property shall be owned by

his children, share and share alike. That purpose is in harmony with the previous provision of the will wherein, after having devised to his children each a small parcel of land, the testator directed that not one of the lots so devised should ever be conveyed, sold, or in any other way disposed of outside of his own family, so long as there should be one or more legal offsprings of his family. "Conditions may be merely personal to those designated, and not apply to their grantees." 40 Cyc. 1697; Wood v. Ogden, 121 Mo. App. 668, 97 S. W. 610; Alexander v. Alexander, 156 Mo. 413, 57 S. W. 110.

Again, Catherine's interest went to her, as we have seen, as an estate in fee, subject to be defeated upon the performance of a condition subsequent, the payment to her by one or more of her brothers of a stipulated sum. We need not pause to consider whether or not the court below correctly held that the sons' right to acquire Catherine's interest ceased with Catherine's death, as being thereby rendered impossible of performance. We are of the opinion that the condition subsequent could not be complied with, even if Catherine were now surviving, by the tender to her of the sum specified in article third within the time therein limited, by any one other than those who were expressly given that right by the will, for a conveyance by the heirs of Catherine to the plaintiff in error would not be the conveyance which was contemplated by the testator. In 13 Cyc. 689, it is said:

"Conditions subsequent, working a forfeiture of the estate conveyed, should be strictly construed, as such conditions are not favored in law, and are to be taken most strongly against the grantor to prevent such forfeiture."

In 30 Am. & Eng. Enc. of Law, 802, concerning conditional devises and bequests, it is said:

"Conditions subsequent are considered liberally, in order to save, if possible, the vested estate or interest."

"A contingency divesting a prior vested interest must happen literally." 1 Roper on Legacies, 619.

These principles are abundantly sustained by the authorities. Nevius v. Gourley, 95 Ill. 206, 213; McFarland v. McFarland, 177 Ill. 208, 217, 52 N. E. 281; Merrifield v. Cobleigh, 4 Cush. 184; Hooper v. Cummings, 45 Me. 359; Ritchie v. K., N. & D. Ry. Co., 55 Kan. 36, 56, 39 Pac. 718; Taylor v. Sutton, 15 Ga. 103, 60 Am. Dec. 682; Southwick v. N. Y. Christian M. Society, 151 App. Div. 116, 135 N. Y. Supp. 392; Davis v. Gray, 16 Wall. 203, 230, 21 L. Ed. 447; Southard v. Central Railroad Co., 26 N. J. Law, 13; Burgson v. Jacobson, 124 Wis. 295, 102 N. W. 563; Potomac Power Co. v. Burchell, 109 Va. 676, 64 S. E. 982; Harrison v. Harrison, 105 Ga. 517, 31 S. E. 455, 70 Am. St. Rep. 60.

The judgment is affirmed.