SAM CRAVENS, GEORGE CRAVENS, GLEN CRAVENS, EVA ALLEGA and
   ANNIE L. VEATCH v. MORTIMER CRAVENS, Appellant.—61 S. W.
   (2d) 739.

Division Two, June 24, 1933.*

*Gilbert Lamb* for appellant.

*NOTE: Opinion filed at October Term, 1932, March 3, 1933; motion
for rehearing filed; motion overruled April 20, 1933; motion to transfer
to Court en Banc filed; motion overruled at May Term, June 24, 1933.

136

*Roy McKittrick* for respondents.

WESTHUES, C.—Respondents, plaintiffs below, filed this suit against appellant, defendant below, in the Circuit Court of Chariton County, Missouri. The nature of the suit was to try title to certain real estate. The prayer of the petition asks for possession of the land and asks the court to declare plaintiffs the owners in fee. The trial court entered a decree for plaintiffs and defendant appealed.

Plaintiffs and also the defendant claimed title to the land by virtue of the second clause of the last will and testament of R. L. Cravens, deceased, dated July 4, 1921, which reads as follows:

"To my wife, Minnie Cravens, I give, devise and bequeath the home place whereon we now live, in the City of Salisbury, Missouri, complete, together with thirty acres of land, being the east part of the north half of the northeast quarter of section sixteen, township

fifty-three, range seventeen, Chariton County, Missouri, for and during her natural life, with full power of disposal in any way she may desire, by sale, will, mortgage or otherwise, but in the event that she fails to make disposition of the same, or any part thereof during her life, that part remaining undisposed of shall pass to my son, Mortimer Cravens, on this condition: That he has lived with his mother until reaching the age of 21 years, and is still living at the time of her death, but in case he has not remained with his mother until reaching the age of 21 years, or is dead at the time of her death, leaving no descendants, then the same shall pass to and become the property of my living brothers and sisters, or the descendants of such as may be dead, *per stirpes,* in equal portions, share and share alike.''

Plaintiffs are the brothers and sisters of R. L. Cravens and their descendants, referred to in the will. The contention of plaintiffs at the trial was that defendant, Mortimer Cravens, had not performed the condition mentioned in the will of living with his mother until he reached the age of twenty-one years. The trial court so found and for that reason entered a decree for plaintiffs.

The undisputed facts in the case are about as follows: Mortimer Cravens was born December 8, 1906. When he was about ten years old he was legally adopted by the testator, R. L. Cravens and his wife, Minnie Cravens, who had no children of their own. Mortimer finished high school in May, 1924. In August of the same year R. L. Cravens, the testator, sent Mortimer to the Chillicothe Business School at Chillicothe, Missouri. The testator purchased a life scholarship for the defendant at that school. Mortimer began taking a typewriting, stenographic and bookkeeping course. The testator died in August of the same year. Defendant continued his studies until the latter part of 1925. During the time he attended the school he visited his mother during vacations and at other times. He remained at home a short time after he finished school and then in obedience to the advice and request of his mother went to Kansas City and obtained employment with the Kansas City Power and Light Company, where he was employed until the time of the trial. After the death of the testator, Minnie Cravens, the mother, paid the necessary expenses for keeping defendant in school and also paid Mortimer's expenses of going to Kansas City to seek employment. Defendant visited his mother on various occasions and the mother visited defendant at Kansas City. While defendant was employed in Kansas City, he was married. The wife of defendant visited the mother of Mortimer both before and after the marriage.

It is apparent from the evidence that it was the wish of the widow that her adopted son be employed and remain at his work rather than spend his time with her at her home. There is no evidence whatever in the record tending to prove that defendant and his mother ever

had the slightest misunderstanding. We infer from the record that the defendant willingly complied with the wishes expressed by his mother. She died during the month of April, 1929, without having conveyed or devised any part of the real estate in controversy.

██ The law would certainly be harsh if, under the circumstances of this case, it would declare that the defendant had by his conduct forfeited his inheritance. The law does not favor forfeitures of this kind. [Harrison v. Harrison, 31 S. E. 455; 40 Cyc. 1717; McMahan v. Hubbard, 217 Mo. 624 (Syl. 7), 118 S. W. 481 (Syl. 6).]

██ The provision in the will that the son remain with his mother was evidently made for the benefit of the mother. The mother did not need the help of the son for the purpose of making a living. She was entirely satisfied with the son's conduct. For the son to have literally complied with the condition of the will he would have been compelled to abandon his work at school, that he had commenced as planned by the testator, and to remain at home, perhaps idle, contrary to his mother's wishes. In 46 Corpus Juris, page 1221, section 4, we read: "In the absence of the father, the mother may direct the child's conduct, residence, education, occupation, and associates." The mother, Minnie Cravens, had the legal authority to and did direct defendant's conduct.. By her own acts she waived a strict compliance with the condition of the will. This she had a right to do. [Alexander v. Alexander, 57 S. W. 110, 156 Mo. 413; Cunningham v. Cunningham (Mo. App.), 34 S. W. (2d) 1. c. 997 (1).] The condition was for the mother's benefit and plaintiffs are in no position to complain because she waived a strict compliance therewith. It is also evident from the actions of the testator that the main object of the condition in the will was to have the son remain loyal and obedient to his mother and thereby be an aid and a comfort to her and if so he should inherit the property. This purpose was fully accomplished. ██ The son, so far as possible, complied with the condition imposed upon him. Conditions of this nature must be interpreted in the light of the connecting facts and circumstances. Harrison v. Harrison, supra, 31 S. E. 1. c. 457, 458; Boggess v. Crail (Ky.), 5 S. W. (2d) 906, is a case directly in point. It was there aptly said at page 908 (2, 3): "It is settled by the cases that an estate granted on condition of the performance of future duties will not be defeated by anything less than the refusal or failure of the grantee to perform the duties. If nonperformance was not the fault of the grantee, but the result of conditions over which he had no control, the grant is not defeated." The case of Alexander v. Alexander, supra, is also in point. In that case property was left to a son on condition that the son should care for and support his mother as long as she should live. The mother, having sufficient means of her own, supported herself and also the son. This court held that the

condition was of a personal nature and was waived by the mother. [See, also, Lynch v. Melton, 150 N. C. 595, 64 S. E. 497, 27 L. R. A. (N. S.) 684, 689; Hawkins v. Hansen (Kan.), 142 Pac. 280.] In the notes of 27 L. R. A. (N. S.), at pages 684, 685, we find the following observation: ''There is obvious justice in not holding the devisee or legatee responsible for the consequence of a breach of or failure to perform, a condition, where such a breach or failure is not due to fault on his part, and where it is clear that such a contingency was not within the testator's contemplation. And at bottom *the question always is whether it was the testator's intention that an involuntary breach of condition should operate to defeat the gift.*'' (Italics ours.) This latter comment from Lawyers' Reports Annotated is especially applicable to the case at hand. A strict compliance by the defendant in this case would have been inconsistent with the testator's plans and contrary to the wishes of the mother. From the facts and circumstances it certainly was not the intention of the testator that the son should forfeit his inheritance by his conduct as revealed by the evidence. The intention of the testator, if ascertainable, should be paramount.

We hold, therefore, that the defendant is entitled to take the property given him by the second clause of the will. The judgment of the trial court must be reversed with instructions to enter a judgment in favor of defendant. It is so ordered. *Cooley* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.